## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

RALPH SLAUGHTER                                              CIVIL ACTION

VERSUS

DALE ATKINS, ET AL                                           NO. 09-190-C-M2

## RULING & ORDER

This matter is before the Court on the Motion to Limit Deposition Testimony of Dr. Kassie Freeman and Lea Montgomery Under Rule 30(d) and for Protective Order Pursuant to Rule 26 (R. Doc. 134) filed by defendants, Board of Supervisors of Southern University and Agricultural and Mechanical College ("the Board"), Tony Clayton ("Clayton"), and Lea Polk Montgomery ("Montgomery")(collectively "defendants").  Plaintiff, Ralph Slaughter ("Slaughter"), has filed an opposition (R. Doc. 136) to defendants' motion.

## FACTS & PROCEDURAL BACKGROUND

Slaughter filed this suit on April 3, 2009.  In his complaint, he alleges that the defendants, various members of the Board, conspired with one another to retaliate against him on account of his having previously filed a federal lawsuit, his giving of testimony and evidence therein, and his reporting and complaining of gender discrimination/harassment in the workplace.  That prior lawsuit was settled in 2007, and as part of the settlement, the Board granted Slaughter a two-year employment contract in the position of President of Southern University.  The contract indicated that it would expire on its own terms on June 30, 2009.  In this suit, however, Slaughter contends that he was entitled to have the employment contract renewed or extended and that, following the dismissal of the prior federal litigation (which he alleges was "protected activity" under Title VII), the "defendants

1

undertook a course of action designed to punish [him] and force him from his position as President of the Southern University System." *See*, Complaint, ¶17.  He asserts that the defendants are liable pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, and Title VII.

Slaughter has filed three (3) other lawsuits relating to the defendants' conduct alleged herein:  (1) *Slaughter v. Board*, No. 577,011, 19th Judicial District Court, filed April 2, 2009, alleging that the Board's vote not to renew his employment contract violated Louisiana's meeting laws; (2) *Slaughter v. Board of Supervisors*, No. 577,092, 19th Judicial District Court, filed April 3, 2009, alleging that the vote not to renew his employment contract was retaliation in violation of Louisiana's anti-whistleblower statute; and (3) *Slaughter v. Board of Supervisors*, No. 582,307, 19th Judicial District Court, filed September 4, 2009, alleging Southern University wrongfully deducted sums from his terminal pay for the removal of furniture, fixtures, and equipment from the University's campus following his last day of employment.  The first of those suits was dismissed with prejudice.  The second suit is still pending, and the third suit was tried during December 2009, with judgment being rendered in favor of Southern University.  Additionally, on December 10, 2009, the Southern University System Foundation ("the Foundation") filed suit against Slaughter (*Southern University System Foundation v. Ralph Slaughter*, No. 585,405, 19th Judicial District Court), seeking reimbursement for funds that Slaughter allegedly expended out of the Foundation to pay his lawyer and other expenses.

For purposes of discovery in the present litigation, the depositions of Dr. Kassie Freeman ("Dr. Freeman"), the interim president of Southern University,[1] and defendant Montgomery were scheduled for April 8, 2010.  During Dr. Freeman's deposition, plaintiff's

---

[1] Dr. Freeman was named Southern President on June 26, 2009, with her interim term beginning on July 1, 2009.

counsel attempted to question Dr. Freeman about a September 24, 2009 letter that Dr. Freeman sent to Slaughter concerning his terminal pay. That letter indicates that approximately $30,000.00 was deducted from Slaughter's terminal pay for furniture, fixtures, and equipment that could not be located following his last day of employment. Defense counsel objected to that line of questioning and instructed Dr. Freeman not to answer on the basis that Slaughter had previously litigated the issue relating to the deduction from his terminal pay in state court and had lost that suit.[2] Defense counsel has now filed this motion to have the Court limit Dr. Freeman's deposition so that plaintiff's counsel cannot engage in that line of questioning on the ground that the September 24, 2009 letter has nothing to do with the present case concerning the Board's alleged retaliatory decision not to renew or extend Slaughter's employment contract, which occurred six (6) months before the issuance of that letter, on March 27, 2009.

Relative to Dr. Freeman's deposition, defendants also seek a protective order to prevent plaintiff's counsel from engaging in two (2) other lines of questioning. One line of questioning relates to a reduction in force plan at Southern University that was approved in August 2009, with an effective date of September 30, 2009. Defendants contend that Dr. Freeman prepared that reduction in force plan due to "mandated budget cuts by the State" and that plaintiff's counsel should not be permitted to question Dr. Freeman about employment decisions she made for numerous employees, which are completely unrelated

---

[2] The depositions of Dr. Freeman and Montgomery were continued after a telephone conference with Magistrate Judge Riedlinger, during which defense counsel was instructed to file a motion concerning defendants' objections. As an aside, the undersigned notes that the remark of defense counsel, Mr. Unglesby, which was made following the telephone conference with Magistrate Judge Riedlinger and which constitutes part of the recorded transcript from Dr. Freeman's deposition (at p. 109, lines 13-16), was entirely unprofessional and is unappreciated by the undersigned and all of the other well-qualified judges at this Court. *See*, Freeman Deposition, Exhibit A to plaintiff's opposition, pp. 109 (where Mr. Unglesby stated on the record, "They ought to make a rule that all federal judges and magistrates ought to have to go back every so often and be lawyers").

to the present retaliation claim of Slaughter.  The second line of questioning relates to a Foundation board meeting that recently occurred on March 10, 2010, nearly one (1) year after the Board's decision not to renew or extend Slaughter's employment contract.  The Foundation's counsel objected to such questioning on the basis of privilege,[3] and defendants now seek a protective order to prevent plaintiff's counsel from engaging in further questioning concerning that subject.

Relative to Montgomery's deposition, defendants objected to plaintiff's counsel's attempt to question Montgomery about the identity of any persons who submitted letters of recommendation with her application to Southern University Law Center, where Montgomery is presently a student.  Defendants objected on the ground that there is a privilege under the Family Educational Rights and Privacy Act, which protects Montgomery's academic records.  Defendants further contend herein that Montgomery's tenure in law school has absolutely no relevance to Slaughter's retaliation claim in this suit, and as a result, there is no good faith basis for abrogating that privilege.  Finally, plaintiff's counsel also indicated that she intends to question Montgomery about the substance of Foundation board meetings since June 30, 2009, and defendants objected to such questioning on the basis that it is being conducted "in bad faith and in a manner to unreasonably annoy or embarrass the witness."  Defendants contend that no occurrence at any Foundation meeting in 2010 could have any relevance to the Board's decision not to renew or extend Slaughter's employment contract on March 27, 2009.  Through their motion, they seek to limit the scope of Montgomery's deposition so that she is not

---

[3] It should be noted that the Foundation is not a party to this litigation.

questioned about matters she may have learned during any Foundation meetings after Slaughter's last day of employment.

## **LAW & ANALYSIS**

Generally, the scope of discovery is very broad, and parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.   It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Nevertheless, pursuant to Fed. R. Civ. P. 30(d)(3)(A), at any time during a deposition, a deponent or a party may move to terminate or limit that deposition if it is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3).  The motion may be filed in the court where the action is pending or where the deposition is being taken.  *Id.*  If the objecting deponent or party so demands, the deposition may be suspended for the time necessary to obtain an order, as occurred in the present case.  *Id.*  The court may order that the deposition be terminated or may limit its scope and manner as provided in Fed. R. Civ. P. 26(c).  Rule 26(c) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.  *See*, Fed. R. Civ. P. 26(c)(1)(D).

**I.     Dr. Freeman's deposition:**

**(A)     The September 24, 2009 correspondence concerning deductions from Slaughter's terminal pay:**

As discussed above, defendants contend that plaintiff's counsel should not be permitted to question Dr. Freeman about her September 24, 2009 letter to Slaughter regarding deductions from his terminal pay for furniture, fixtures, and equipment that he removed from campus after his last day of employment there on the basis that such issue has already been fully litigated in state court in the Foundation's favor[4] and has no relevance to the present matter.  Despite such argument concerning irrelevance, however, the defendants did assert arguments (in connection with Slaughter's motion for preliminary injunction in this matter through which he sought to be reinstated as Southern University President) concerning Slaughter's removal of items from the University campus and the judgment in the University's favor in the state court proceedings as evidence that Slaughter was not fit to be reinstated as President of the University.  *See*, Transcript of Preliminary Injunction Hearing, Exhibit C to Slaughter's opposition, pp. 20-25.  Defendants also argued, in their written opposition to Slaughter's motion for preliminary injunction, that Slaughter's responses to certain discovery requests in his state lawsuits concerning "actions taken by him to expend funds of the University or Southern University System Foundation solely for his personal benefit" "may show that he has not acted in the best interest of the University

---

[4] Slaughter filed suit in state court concerning that deduction in his terminal pay and alleged that it was an illegal withholding of money from his final compensation by the Foundation.  Following trial, the state court ruled in the Foundation's favor and found that it was "justified in seeking a credit or setoff for items paid for with Foundation funds which were improperly removed from the campus by Slaughter, as they became state property upon delivery to Southern University."  *See*, Exhibit D to defendants' motion, pp. 149-150.

6

and [that] obviously, reinstating him would further harm the University." *See*, R. Doc. 52, p. 12.

While defendants' arguments were made in connection with Slaughter's request for a preliminary injunction to be reinstated, which was denied by the Court on February 23, 2010, Slaughter has correctly pointed out, in his present opposition, that a court, in a Title VII case, can award reinstatement and/or back pay.[5]   Thus, even though the Court determined that Slaughter did not make the proper showing for immediate reinstatement to his position in connection with his preliminary injunction motion, the possibility still exists that he could be awarded reinstatement and/or back pay following a trial in this matter. Since defendants have conceded that the removal of certain items from the university following his last day of employment is relevant to whether Slaughter should be reinstated and since the determination of Slaughter's terminal pay is relevant to any claim he may have for back pay in this suit, Dr. Freeman's September 24, 2009 letter concerning those issues is relevant to this suit.[6]   Furthermore, although defendants make much of the fact that the issue relating to Slaughter's removal of furniture and equipment from the University

---

[5] *See*, 42 U.S.C. §2000e-5(g)(1)("If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate"); *Franklin v. California Youth Authority*, 2009 WL 1284053, **1 (9th Cir. 2009)(Citations omitted)("Title VII . . . permits courts to grant equitable remedies to employees who have been impermissibly discriminated against by employers . . . Because the jury found that [the employer's] sole motivation in dismissing [the plaintiff employee] was retaliation, the district court acted within its discretion in awarding reinstatement and back pay"); *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000)(explaining that back pay awards are presumed and that reinstatement is the preferred remedy in Title VII cases).

[6] Even if those issues may not be relevant to the Board's decision not to renew or extend Slaughter's employment contract, which occurred six (6) months earlier on March 27, 2009, those issues are nevertheless relevant to the potential damages Slaughter could receive in this suit and are therefore subject to discovery.

has been fully litigated, Slaughter points out in his opposition that the state court judgment concerning that issue is presently on appeal.  Accordingly, there remains the possibility that such judgment could be overturned, thereby also impacting any decision this Court might make concerning reinstatement and/or back pay.  As such, plaintiff's counsel should be permitted to question Dr. Freeman concerning the September 24, 2009 letter.

**II.      Discovery concerning Montgomery's letters of recommendation to law school:**

As to defense counsel's argument that plaintiff's counsel should not be permitted to question Montgomery concerning the recommendations she received for her application to the Southern University Law Center, the undersigned agrees with defendants in part. Although the Family Educational Rights and Privacy Act ("FERPA") does not appear to be a basis for precluding that questioning,[7] the undersigned nevertheless finds that such questioning lacks sufficient relevance to this suit to be permitted.  The undersigned fails to see how the identity of the individuals who recommended Montgomery for law school admission, even if those individuals may have been somehow affiliated with the Southern Board of Supervisors, has any relevance to Slaughter's claims herein that the Board members conspired and retaliated against him by not extending or renewing his contract as Southern University President.  While plaintiff's counsel has asserted in a conclusory fashion that such information is relevant to Montgomery's credibility, she has not explained

---

[7] FERPA, 20 U.S.C. §1232g, was designed primarily to regulate the release of student records by educational agencies and institutions and requires the consent of the student or the student's parent where personally identifiable information from the educational records of a student is sought to be disclosed. *Tarka v. Franklin*, 891 F.2d 102 (5th Cir. 1989).  An educational agency or institution that unlawfully releases a student's record, including a student's application file, may lose federal funding.  20 U.S.C. §1232g(b)(1); *Id.*  In the present case, plaintiff's counsel is not seeking any academic records or application files relating to Montgomery from Southern University Law Center to which FERPA would apply.  Moreover, she is not seeking any personally identifiable information concerning Montgomery; she is simply asking for the names of the individuals who provided Montgomery's recommendation letters for her application to law school.  Thus, FERPA does not appear to be applicable.

that assertion in any detail.  Accordingly, she will not be permitted to question Montgomery concerning the identify of persons who prepared Montgomery's letters of recommendation to law school.

**III.    Questions regarding Foundation board meetings after the last day of Slaughter's employment & defendants' requested protective order:**

Defendants last assert that plaintiff's counsel should not be permitted to question Montgomery and other board members and university employees and officials about the meetings of the Board and the Foundation since Slaughter's last date of employment, June 30, 2009.[8]  Plaintiff's counsel has attempted to question Dr. Freeman and other board members about a reduction in force plan that occurred in August and September 2009, which, according to the defendants, was necessitated by State budget cuts.  She has also attempted to question Dr. Freeman about lawsuits filed by employees who were laid off as part of that reduction in force and about votes/decisions the Foundation has made as recently as its March 2010 board meeting.  Plaintiff's counsel contends that discovery of information regarding the Foundation's and the Board's "later decisions" is relevant to show whether they "followed their usual policies and practices in unlawfully interfering with Dr. Slaughter's contract, removing him from the board, and handling the expenditure of funds for other employees."  She further asserts that such information "may be relevant to Defendants' retaliatory intent, or it may tend to discredit Defendants' actions or assertion of legitimate motives."

---

[8] Montgomery serves on both the Southern University Foundation Board of Directors and the Board of Supervisors for Southern University.  According to defendants' motion, the Foundation is a private non-profit 501(c)(3) organization that was established to raise money to support the mission of the university.  Although defendants assert that the Foundation is a private entity, which is entitled to hold its meetings in confidence, they have not presented the Court with any legal support for the contention that matters discussed or votes made during those meetings are confidential/privileged.

While plaintiff's counsel is correct that, generally, a Title VII plaintiff is permitted to discover evidence of alleged discrimination/retaliation against other employees to prove an employer's motive or intent in discharging him/her,[9] such discovery is not unlimited. For example, a plaintiff is only allowed to discover such information as it relates to other "similarly situated" employees.[10] Slaughter has not demonstrated that any of the Southern employees who were laid off as part of the reduction in force in August and September 2009 (or as a result of any future reductions in force) are, in any way, "similarly situated" to him. He has not disputed the defendants' assertion that such reduction in force terminations were necessitated by State budget cuts, rather than as a result of any sort of retaliatory animus on the part of the defendants. Moreover, he has not alleged how any of those employees' situations might even be remotely similar to his own situation.

This Court previously determined (at the preliminary injunction hearing): (1) that the conduct of the Board and Slaughter, which is at issue in this suit, appears to have been governed by his employment contract created in 2007, (2) that Slaughter was not "terminated" by the Board but instead that the Board simply decided not to renew or extend that contract of employment, and (3) that, as a result, the employment contract expired on its own terms on June 30, 2009. That situation is drastically different from decisions made

---

[9] *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 981 (10th Cir. 1996); *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 733 (8th Cir. 1996).

[10] *See, Paananen v. Cellco Partnership*, 2009 WL 3327227 (W.D. Wash. 2009)(Citations omitted)(In employment discrimination cases, evidence relating to the employer's treatment of employees "similarly situated" to the plaintiff is relevant for two reasons. First, such comparator evidence is relevant to prove that an employer discriminated against other employees and therefore had a discriminatory motive, that there was a pattern or practice of discrimination, or that the employer implemented policies that encouraged or permitted discrimination. Secondly, evidence that "similarly situated" employees were treated differently is relevant to establish that an employer's stated reasons for termination are pretextual).

by the Board to terminate various employees as part of a reduction in force plan allegedly brought about by State budget cuts.  At present, the undersigned does not see how the policies and procedures utilized in terminating University employees as part of a reduction in force are relevant to proving the Board's motive or intent in not renewing/extending Slaughter's employment contract.  Furthermore, Slaughter is not entitled to delve into any and all decisions and matters discussed at Board and Foundation meetings since his last date of employment at Southern (June 30, 2009), unless those decisions or matters somehow relate to his tenure of employment.[11]

The undersigned therefore finds that the defendants are entitled to a protective order essentially limiting discovery in the ways suggested in their motion.  Specifically, plaintiff should not be permitted to inquire regarding the following subjects:  (1) the reorganization plan and lay-offs necessitated by the budget reductions made effective September 30, 2009; (2) any potential reorganization or lay-off plan that may be necessitated by reductions in State appropriations for fiscal years 2009-2010 or 2010-2011; (3) the deliberations or discussions in Foundation Board meetings after June 30, 2009 that are not related to Slaughter's tenure of employment; and (4) any other decision of the Board made after June 30, 2009 that is not related to Slaughter's tenure of employment.

Accordingly;

---

[11] Thus, although the undersigned finds that defendants have not sufficiently supported any contention that matters discussed at Foundation or Board meetings are confidential/privileged, the undersigned nevertheless finds that the decisions and matters discussed at those meetings since Slaughter's last date of employment at Southern are irrelevant unless they somehow relate to his tenure of employment.  He is entitled to information concerning decisions and matters discussed at those meetings after his last date of employment if they relate to his tenure of employment since those matters could be relevant to or lead to admissible evidence supporting his allegation that the Board's decision not to renew or extend his contract was a result of retaliatory animus and was a conspiracy.

**IT IS ORDERED** that the Motion to Limit Deposition Testimony of Dr. Kassie Freeman and Lea Montgomery Under Rule 30(d) and for Protective Order Pursuant to Rule 26 (R. Doc. 134) filed by defendants, Board of Supervisors of Southern University and Agricultural and Mechanical College, Tony Clayton, and Lea Polk Montgomery, is **GRANTED IN PART** and **DENIED IN PART** and that future discovery in this matter shall be subject to the limitations set forth in the above Ruling.

Signed in chambers in Baton Rouge, Louisiana, May 14, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

12