# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**RALPH SLAUGHTER**

**CIVIL ACTION**
**No. 09-190-RET-CN**

**VERSUS**

**DALE ATKINS, JOHNNY ANDERSON,**
**TONY CLAYTON, LEA POLK-MONTGOMERY,**
**AND BOARD OF SUPERVISORS OF SOUTHERN**
**UNIVERSITY AGRICULTURAL & MECHANICAL COLLEGE**

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion to Dismiss (Doc. No. 14) submitted by defendant, Dale Atkins, and a Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 16) filed by defendant, Johnny Anderson.  The Defendants' Motions have subsequently been converted to Motions for Summary Judgment.[1]  Plaintiff, Ralph Slaughter, has filed opposition to both Motions (Doc. No. 19).  Defendants have replied to plaintiff's opposition (Docs. No. 24 & 27) and plaintiff has filed a Sur-Reply (Doc. No. 61).  Jurisdiction is allegedly based on federal question, 28 U.S.C. § 1331.  Supplemental jurisdiction, 28 U.S.C. § 1367, is alleged over claims arising under state law. The Court, having reviewed the record, the law, and the arguments of the parties, now concludes that the defendants' Motions should be **GRANTED** in part and

---

[1] See Record Document No. 69, Notice to Counsel.

Doc#1830

**DENIED** in part for the following reasons.

## BACKGROUND

On April 1, 2006, plaintiff assumed the presidency of Southern University and Agricultural and Mechanical College.  While employed as President, plaintiff filed a lawsuit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana against then-defendants, Board of Supervisors of Southern University and Agricultural and Mechanical College ("the Board"), Honorable Kathleen Blanco, individually and in her official capacity, Dale Atkins, individually and in her official capacity, and John Joseph, individually and in his official capacity.  On May 30, 2007, the defendants removed the action to this Court.  In this Court, plaintiff alleged, *inter alia*, that he was illegally retaliated against by the defendants for reporting, protesting, and complaining about sexual harassment in the workplace and for providing testimony and evidence before a Federal Grand Jury in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, Title IX, Louisiana's anti-reprisal statute, La. R.S. 23:967, and Louisiana tort laws.[2]

Ultimately, the original Federal litigation was settled and the parties executed two documents: (1) a Settlement Agreement and Authentic Act of Release[3] and an (2) Employment Contract between the Board and plaintiff.[4]  The

---

[2] See Civil Action No. 3:07-CV-379.

[3] Record Document No. 16-3, Defendant's Exhibit A.

[4] Record Document No. 16-4,  Defendant's Exhibit B.

Settlement Agreement required plaintiff to dismiss any and all claims which he had or may have had against the defendants and Johnny Anderson.  The Settlement Agreement was also expressly conditioned upon execution of the Employment Contract.  The Employment Contract provides, in relevant part, as follows:

> The Board hereby employs Dr. Ralph Slaughter to serve as President of the Southern University System and Secretary to the Board of Supervisors of Southern University…. This agreement is issued for the fiscal year (July 1 – June 30) commencing July 1, 2007 for a fixed term of two (2) years ending June 30, 2009. This agreement shall expire and terminate on June 30, 2009. Contingent upon a favorable performance review and affirmative act of the Board of Supervisors on or before April 1, 2009, this contract may be extended.[5]

Plaintiff signed both of these contracts and they became effective upon the filing of defendant's Joint Motion for dismissal with prejudice on September 6, 2007.[6] After the agreements became effective, plaintiff served his two year term and was given a favorable performance review. However, the Board met on March 27, 2009, and by a vote of eleven to five, elected not to "renew or extended [sic] [plaintiff's] contract that expires on June 30, 2009, and that [plaintiff's] employment with the University will cease on June 30, 2009."[7]

On April 3, 2009, following dismissal of the original Federal litigation,

_____

[5] Record Document No. 16-4, Defendant's Exhibit B, p.1.

[6] See Record Document No. 16-3, Defendant Anderson's Exhibit A, p. 8, ¶ 15; see also Civil Action No. 3:07-CV-379, Record Document No. 173, Joint Motion to Dismiss With Prejudice and to Dissolve the Preliminary Injunction.

[7] Record Document No. 16-6, Defendant's Exhibit D, p. 6.

plaintiff filed the present suit in this Court.  Plaintiff currently alleges that the above-captioned defendants conspired to punish him and force him from his position as President of the Southern University System in retaliation for the filing of his original Federal lawsuit, his engaging in activity protected by Title VII, and his testimony and evidence presented in connection with his initial lawsuit.[8] Specifically, plaintiff alleges violations of Title VII,[9] 42 U.S.C. § 1983, 42 U.S.C. § 1985(2) and (3), as well as violations of state law for the torts of intentional infliction of emotional distress and abuse of rights.

With respect to defendant Anderson, plaintiff alleges the following acts in support of his claims: (1) In 2008, Anderson met with Tony Clayton, another Board member, to secure Clayton's agreement to terminate plaintiff's employment in exchange for Anderson's agreement to provide Clayton with the necessary votes to assume Chairmanship of the Board;[10] (2) On November 27, 2008, Board members Atkins, Anderson, and Clayton met at the Atkins's residence and discussed that they would do everything to terminate and remove plaintiff as President;[11] (3) On March 9, 2009, while Anderson was no longer a member of the board, Anderson told Board Member Jamal Taylor that Anderson

---

[8] Record Document No. 42, Plaintiff's Supplemental and Amended Complaint, ¶ 21.

[9] 42 U.S.C. §2000e, *et seq.*

[10] Record Document No. 1, Plaintiff's Complaint, ¶ 19.

[11] Record Document No. 42, Plaintiff's Supplemental and Amended Complaint, ¶ 21.

would make sure that plaintiff was terminated;[12] (4) Prior to the Board meeting held on March 27, 2009, defendants Clayton and Anderson met at the home of "DW" to discuss their plans to remove Petitioner as President and pre-select how the ensuing search process would be handled and identified who would be named to the search committee;[13] (5) Shortly after the meeting wherein the Board voted to terminate plaintiff, Anderson boasted to Jamal Taylor that Anderson's previous statements to Taylor regarding plaintiff's termination did, in fact, come to pass.[14]

Concerning defendant Atkins, plaintiff alleges the following acts in support of his claims: (1) On November 27, 2008, Atkins, Anderson, and Clayton met at the Atkins's residence and discussed that they would do everything to terminate and remove plaintiff as President;[15] (2) Prior to the board meeting, Atkins contacted nearly all of the board members to poll them for their votes in favor of terminating petitioner and to attempt to persuade them to terminate plaintiff.[16]

Defendants Atkins and Anderson now move to dismiss plaintiff's §1985, §1983, intentional infliction of emotional distress, and abuse of rights claims.

---

[12] Record Document No. 1, Plaintiff's Complaint, ¶ 31.

[13] **Id.** at ¶ 35.

[14] **Id.** at ¶ 44.

[15] Record Document No. 42, Plaintiff's Supplemental and Amended Complaint, ¶ 21.

[16] Record Document No. 1, Plaintiff's Complaint, ¶ 34.

## MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17]

The party seeking summary judgment bears the initial burden of setting forth the basis for its motion and identifying the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[18] The moving party may discharge its burden by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case.[19] Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue of fact for trial.[20] The non-moving party must come forward with evidence which establishes each element for which that party bears the burden of proof at trial. Summary judgment is mandated if the non-movant fails

_____

[17] See Fed. R. Civ. P. 56(c).

[18] **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[19] **Id.** at 325.

[20] **Id.** at 322-23.

to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial.

## ANALYSIS

Plaintiff alleges that defendants Atkins and Anderson are liable to him under Title VII (42 U.S.C. §2000e, *et seq.*), 42 U.S.C. §1983, 42 U.S.C. §1985(2) and (3), and under state law for the torts of intentional infliction of emotional distress and abuse of rights.

Defendants contend that: (1) *Res judicata* precludes any claims alleging that defendants conspired against plaintiff on account of his testifying in Federal Court and filing his original Federal lawsuit as well as any claims stemming from the violation of plaintiff's right to report, complain, and protest sexual harassment and retaliation in the workplace; (2) plaintiff's §1983 claim must fail because defendants were not members of the Board as of the March 27, 2009, meeting wherein the Board voted to deny the renewal of plaintiff's employment contract; (3) plaintiff's §1985 claim must fail because he was not fired from his position but rather, his employment contract was not extended; (4) plaintiff's intentional infliction of emotional distress claim must fail because he did not suffer severe emotional distress and there are no allegations of extreme and outrageous conduct; (5) plaintiff's abuse of rights claim must fail because defendants were not members of the Board as of the March 27, 2009, meeting wherein the Board voted to deny the renewal of plaintiff's employment contract.

On January 21, 2010, this Court issued a Notice to Counsel stating that it was inclined to grant summary judgment in favor of defendants Atkins and Anderson on plaintiff's 42 U.S.C. § 1985 claims.[21]  Specifically, the Court requested briefing on the relation between plaintiff's § 1985 claim and the intra-corporate conspiracy doctrine, whether plaintiff had alleged facts sufficient to conclude that the alleged conspiracy was motivated by a racial or otherwise class-based discriminatory animus as required by 1985(3) and the last two clauses of 1985(2), and whether plaintiff had sufficiently shown a nexus between the alleged conspiracy and a proceeding in federal court as required by the first two clauses of 1985(2).  Plaintiff and defendants replied.[22]

## I. *Res Judicata*

Defendants contend that the doctrine of *res judicata* prohibits plaintiff from relitigating claims that he asserted against defendants in a prior lawsuit where those claims were dismissed with prejudice as a result of the Settlement Agreement and Authentic Act of Release.  Specifically, defendants argue that any claims alleging that defendants conspired against plaintiff on account of his testifying in Federal Court and filing his original Federal lawsuit as well as any

---

[21] See Record Document No. 69, Notice to Counsel.

[22] See Record Document No. 83, Atkins' Motion for Summary Judgment Submitted in Response to the Court's Notice to Counsel;  Record Document No. 85, Anderson's Supplemental Memorandum in Support of Motion for Summary Judgment in Response to the Court's Notice to Counsel; Record Document No. 84, Plaintiff's Response Pursuant to Notice to Counsel.

claims stemming from the violation of plaintiff's right to report, complain, and protest sexual harassment and retaliation in the workplace are precluded. Plaintiff argues that the claims at issue in the instant case arise from acts perpetrated against him subsequent to the 2007 dismissal and confection of the settlement agreement, and therefore, the settlement cannot bar liability for defendants' subsequent actions.

"The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action."[23]  For *res judicata* to operate as a bar to a claim, four elements must be met: (1) the parties in both the prior suit and current suit must be identical; (2) a court of competent jurisdiction must have rendered the prior judgment; (3) the prior judgment must have been final and on the merits; and (4) the plaintiff must raise the same cause of action in both suits.[24]  Additionally, even where a Court determines that the foregoing elements are met, a court must also determine whether "the previously unlitigated claim could or should have been brought in the earlier litigation."[25]  Regarding the final inquiry, the Fifth Circuit has previously noted that "[t]he doctrine [of *res judicata*] does not... bar a suit based on acts of the defendant that have occurred

---

[23] **Davis v. Dallas Area Rapid Transit**, 383 F.3d 309, 312-13 (5th Cir.2004).

[24] **Id.** at 313.

[25] **D-1 Enters., Inc. v. Commercial State Bank**, 864 F.2d 36, 38 (5th Cir.1989);  see also  **In re Howe**, 913 F.2d 1138, 1145 (5th Cir.1990); **Osherow v. Ernst & Young, LLP**, 200 F.3d 382, 388 (5th Cir.2000).

subsequent to the final judgment asserted as a bar."[26] Therefore, a subsequent wrong constitutes a new cause of action.[27]

Plaintiff's prior lawsuit ended when this Court entered an order granting the defendant's Joint Motion for dismissal with prejudice on September 7, 2007.[28] Plaintiff's current lawsuit alleges that defendants conspired to punish him and force him from his position as President of the Southern University System in retaliation for the filing of his original Federal lawsuit, his testimony and evidence presented in connection with that lawsuit, and engaging in activity protected by Title VII.  The conspiracy, as alleged by plaintiff, began on November 27, 2008, when Atkins, Anderson, and Clayton met at the Atkins's residence, and ended with the March 27, 2009, vote declining to renew plaintiff's contract.  Because the alleged conspiracy did not take place until after the Court's September 7, 2007, Order, the claims that plaintiff currently advances could not have been raised in plaintiff's prior lawsuit. Therefore, the doctrine of *res judicata* cannot bar the claims in the instant suit.

---

[26] See **Blair v. City of Greenville**, 649 F.2d 365, 368 (5th Cir.1981)(citing J. W. Moore & T. S. Currier, Moore's Federal Practice 621, 1155 (1980)).

[27] See **Lawlor v. National Screen Service Corp.**, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (prior consent judgment in a private antitrust action did not bar similar action based upon the subsequent acts of the defendant); **Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.**, 421 F.2d 1313 (5th Cir. 1970).

[28] See Civil Action No. 3:07-CV-379, Record Document No. 175.

## II. Section 1983 Claims

Plaintiff alleges that defendants impaired, interfered with, and abridged his First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Defendants Atkins and Anderson contend that they cannot be liable under § 1983 because they were not acting under color of law – that is, they were not members of the Board, and were not present at the meeting when the Board voted not to renew plaintiff's contract.[29]

The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendants have deprived him of a right secured by the 'Constitution and laws' of the United States.[30] Second, the plaintiff must show that the defendants deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'[31] This second element requires that the plaintiff show that the defendant acted 'under color of law.'[32] Private individuals generally are not

---

[29] The parties limited their arguments to this issue. Therefore, the Court confines its analysis to the issue of whether defendants acted under color of law for purposes of § 1983. The Court does not address the issues of whether defendants reached an understanding to deprive plaintiff of his constitutional rights or whether plaintiff suffered an actual deprivation of his constitutional rights.

[30] **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

[31] **Id.**

[32] **Id.**

considered to act under color of law, i.e., are not considered state actors.[33]

Notwithstanding this limitation, a private individual may act under color of law in

certain circumstances, such as when a private person is involved in a conspiracy

or participates in joint activity with state actors.[34]

Plaintiff alleges that a conspiracy was formed between Atkins and

Anderson, who were not on the Board as of March 27, 2009, and did not attend

the Board meeting, and Clayton and Montgomery, who were on the Board as of

March 27, 2009 and voted not to renew plaintiff's contract.  In support of this

contention, plaintiff submits the testimony of Jamal Taylor, Joseph Shelton, and

Shanna Little.  Jamal Taylor stated that he was present during the November 27,

2008, meeting at Atkins' residence. Taylor recounted that during the meeting,

Atkins, Anderson, Clayton, and other Board members were present and that

Atkins and Anderson discussed that they may not get reappointed to the Board

but they would do everything to terminate and remove plaintiff as President.

Taylor also stated that the Board members present acknowledged their

agreement to the same.[35]  Joseph Shelton stated that Clayton told him that

Clayton, Atkins, Anderson, and other members of the Board had met at Atkins'

---

[33] **Ballard v. Wall**, 413 F.3d 510, 518 (5th Cir.2005)(citing **Lugar v. Edmondson Oil Co.**, 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

[34] **Ballard**, 413 F.3d at 518.

[35] Record Document No. 84-2, Exhibit G, Affidavit of Jamal Taylor.

house and that "they" were going to "get Ralph."[36]  Shanna Little stated that Brandon Dumas, Board Member Walter Dumas' son, was bragging that "they" had the votes to terminate plaintiff and that he had correctly predicted the vote not to renew plaintiff's contract.[37]

Considering the foregoing evidence, the Court finds that plaintiff has alleged facts which, if believed, would be sufficient to establish that Atkins and Anderson reached an agreement with Clayton and Montgomery such that they acted under color of law for purposes of § 1983.[38]  Therefore, defendants' Motions for Summary Judgment regarding plaintiff's § 1983 claims are denied.

## III. Section 1985 Claims

Plaintiff alleges that defendants conspired against him in violation of 42 U.S.C. §1985(2) and (3).  On January 21, 2010, this Court issued a Notice to Counsel stating that it was inclined to grant summary judgment in favor of defendants Atkins and Anderson on plaintiff's 42 U.S.C. § 1985 claims as it was unclear whether plaintiff had alleged facts sufficient to conclude that the alleged conspiracy was motivated by a racial or otherwise class-based discriminatory animus as required by 1985(3) and the last two clauses of 1985(2), and whether

---

[36] Record Document No. 84-2, Exhibit D, Affidavit of Joseph Cedric Shelton.

[37] Record Document No. 84-2, Exhibit J, Affidavit of Shanna Little.

[38] As previously mentioned, the Court expresses no opinion as to whether defendants reached an understanding to deprive plaintiff of his constitutional rights or whether plaintiff suffered an actual deprivation of his constitutional rights.

plaintiff had sufficiently shown a nexus between the alleged conspiracy and a proceeding in federal court as required by the first two clauses of 1985(2).[39]  After a review of the briefs on those issues, the facts, and the law, the  the Court finds that plaintiff has not met its burden on either issue, and therefore all § 1985 claims against Atkins and Anderson must fail.

42 U.S.C. § 1985 provides, generally, that

in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Two broad categories of conspiracies are described in Section 1985(2).[40]  The first four clauses of § 1985(2) describe conspiracies that are designed to obstruct the course of justice in the federal judicial system.[41]  The last two clauses of § 1985(2) describe conspiracies designed to interfere with the equal protection

---

[39]  See Record Document No. 69, Notice to Counsel.

[40]  **Bradt v. Smith**, 634 F.2d 796, 801 (5th Cir. Unit A Jan. 1981) (citing **Brawer v. Horowitz**, 535 F.2d 830, 839-40 (3d Cir. 1976)).

[41]  **Id.;**  42 U.S.C. § 1985(2) provides, in part:
If two or more persons in any state or territory conspire (1) to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or (2) to injure such party or witness in his person or property on account of his having so attended or testified, or (3) to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or (4) to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror ....

of the laws.[42]

Because the first four clauses of § 1985(2) refer to conspiracies that are designed to obstruct the course of justice "in any court of the United States," plaintiffs seeking to recover under those clauses must show a nexus between the alleged conspiracy and a proceeding in federal court.[43]  Because the last two clauses of § 1985(2) refer to conspiracies designed to deny or interfere with equal protection rights, plaintiffs seeking to recover under those clauses must show a racial or otherwise class-based discriminatory animus.[44]

Additionally, 42 U.S.C. § 1985(3) identifies yet another category of conspiracies designed to deny the equal protection of the laws:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ....

Because it addresses equal protection concerns, § 1985(3) requires, as an

_____

[42] **Id.**; § 1985(2) continues:
(5) (I)f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen equal protection of the laws, or (6) to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person or class of persons, to the equal protection of the laws ....

[43] **Bradt**, 634 F.2d at 801.

[44] **Id.** (citing **Slavin v. Curry**, 574 F.2d 1256, 1262 (5th Cir.), modified, 583 F.2d 779 (5th Cir. 1978) (rehearing en banc denied); **Brawer v. Horowitz**, 535 F.2d at 840).

element of the cause of action, a racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action.[45]

### A. Claims Under § 1985(3) and The Last Two Clauses of § 1985(2)

In its Notice to Counsel, the Court queried whether the alleged conspiracy was motivated by a racial or otherwise class-based discriminatory animus as required by § 1985(3) and the last two clauses of § 1985(2). Plaintiff responded as follows:

> Sex discrimination and harassment in the workplace is fundamentally "class-based" discrimination. In this case, Dr. Slaughter shows, as does the evidence presented, that the conspiracy aimed at Dr. Slaughter was driven by sexually discriminatory animus in the first instance. The conspiratorial activities were, indeed, set in motion by a desire to hide and cover illegal sexual harassment and discrimination in the workplace and, further, to punish those who exposed it, including, along with Dr. Slaughter, virtually all of the witnesses who testified about illegal sexual harassment in 2007.

In order to prevail in a claim under § 1985(3), "the complaint must allege facts showing a conspiracy against plaintiff 'because of' [his] membership in a class, and that the criteria defining the class "were invidious."[46] In accordance with this precedent, and recognizing the parallel language in §§ 1985(2) and 1985(3), the Fifth Circuit held that §§ 1985(2) and 1985(3) required a showing that the conspiracy was motivated by class-based discriminatory animus and that,

---

[45] **Bradt**, 634 F.2d at 801(citing **Griffin v. Breckenridge**, 403 U.S. 88, 96-103, 91 S.Ct. 1790, 1795-98, 29 L.Ed.2d 338 (1971)).

[46] **Lessman v. McCormick**, 591 F.2d 605, 610 (10th Cir.1979) (citing **Harrison v. Brooks**, 519 F.2d 1358, 1360 (1st Cir. 1975)).

to make this showing, a plaintiff is required to establish that he was a member of the class which was the subject of the discriminatory animus.[47] Therefore, a plaintiff's status as whistleblower does not entitle him to protection under §§ 1985(2) and 1985(3).[48]

Although plaintiff creatively attempts to affiliate himself with the class of alleged victims of sexual discrimination, there is no evidence that he was actually a member of that class. Instead, plaintiff alleges that he was member of a class of whisleblowers who exposed sexual discrimination and harassment.  Because plaintiff is not a member of a protected class, nor does he allege that he was subjected to racial discrimination, he cannot prove that the alleged conspiracy was "motivated by a racial or otherwise class-based discriminatory animus" as required by § 1985(3) and the last two clauses of § 1985(2).  Accordingly, his claims under § 1985(3) and the last two clauses of § 1985(2) must fail.[49]

---

[47] See **Bryant v. Military Dept. of Miss.**, 597 F.3d 678, 687 (5th Cir. 2010); see also **Harrison v. Brooks**, 519 F.2d 1358, 1359 (1st Cir.1975); **Tavolini v. Mount Sinai Med. Ctr.**, 198 F.3d 235 (2d Cir. 1999);  **Buschi v. Kirven**, 775 F.2d 1240, 1258 (4th Cir.1985);  **Hicks v. Resolution Trust Corp. Hicks v. Resolution Trust Corp.**,  970 F.2d 378  (7th Cir 1992); **Deretich v. Office of Administrative Hearings**, 798 F.2d 1147, 1153 (8th Cir.1986); **Sauter v. State of Nevada**,  142 F.3d 445 (9th Cir.1998); **Childree v. UAP/GA AG Chem, Inc.**, 92 F.3d 1140, 1146-47 (11th Cir.1996).

[48] **Bryant**, 597 F.3d at 687 (citing **Garrie v. James L. Gray, Inc.**, 912 F.2d 808, 813 n. 13 (5th Cir.1990).

[49] Claims under the first two clauses of §1985(2) require no allegation of racial or class-based invidiously discriminatory animus.  Therefore, these claims will be addressed in the next subsection.  See **Kush v. Rutledge**, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

## B.   Claims Under The First Two Clauses of § 1985(2)

Pursuant to the first two clauses of 42 U.S.C. § 1985(2), a plaintiff must prove that two or more persons conspired to deter him from, or to injure his person or property on account of, his having attended or testified in a proceeding brought in any court of the United States.[50]   Plaintiff contends that defendants conspired to "force[] from his position as President of the Southern University System because [he] filed his original Federal lawsuit, engaged in activity protected by Title VII, and testified and offered evidence in connection with that lawsuit."[51]   Defendants contend, *inter alia*, that their conduct did not injure plaintiff in his person or property within the meaning of the statute and that there is no evidence that they conspired against him because of his participation in his original Federal lawsuit or any other federal proceeding.[52]

### a. Plaintiff Suffered No Cognizable Injury

In **Kinney**, the Fifth Circuit found that Police Officials violated § 1985(2) by conspiring to mount a campaign of economic retaliation against plaintiffs, Kinney

---

[50] The first two clauses of 42 U.S.C. § 1985(2) provide as follows:
If two or more persons in any state or territory conspire (A) to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or (B) to injure such party or witness in his person or property on account of his having so attended or testified...

[51] Record Document No. 42, Plaintiff's Supplemental and Amended Complaint, ¶ 17.

[52] See Record Document No. 85, Anderson's Supplemental Memorandum in Support of Motion for Summary Judgment in Response to Notice to Counsel, p. 3; Record Document No. 109, Atkin's Reply to Plaintiff's Memorandum and Response Submitted Pursuant to Notice to Counsel.

and Hall, in the form of "third-party interference with an at-will employment

relationship."[53]   Kinney and Hall were instructors at the East Texas Police

Academy ("ETPA") who had testified as expert witnesses against police in an

excessive-force case.[54]   After the **Kinney** plaintiffs testified as experts, seven

Police Officials (Police Chiefs and Sheriffs who exercised control over the training

of their officers) began cancelling enrollments in the plaintiffs' classes, barring

their officers from enrolling in the plaintiffs' courses in the future, and making

demands that the plaintiffs' be fired.[55]   From these acts, the **Kinney** Court found

that the plaintiffs had suffered a cognizable injury under § 1985(2).[56]   Specifically,

the Fifth Circuit stated:

> The Police Officials certainly interfered with Kinney's and Hall's
> employment within the meaning of [**Haddle v. Garrison,** 525 U.S. 121
> (1998)]. Not only did they avowedly act in concert to pull their students from
> the plaintiffs' classes, but, according to the district court, they also tried to
> have the plaintiffs fired from their jobs. The plaintiffs suffered economic
> injury as a result of the defendants' actions: Kinney's ETPA contract was
> not renewed, and Hall left the ETPA in apprehension of suffering the same
> fate. Holda's affidavit confirms that, before the defendants began their
> campaign, the ETPA anticipated renewing the plaintiffs' contracts. Coercing

---

[53] **Kinney v. Weaver**, 367 F.3d 337, 353 (5th Cir.2004) (en banc).

[54] **Kinney**, 367 F.3d at 341-2.

[55] **Id.** at 345.

[56] See **Mitchell v. Johnson**, 2008 WL 3244283, *3 (5th Cir. 2008)  (unpublished
opinion)("The primary issue in **Kinney**  was whether the police officials could have violated the
statute by conspiring to mount a campaign of economic retaliation, i.e., boycotting the plaintiffs'
classes and trying to have them terminated. We held that the plaintiffs were injured within the
ambit of the statute because of **Haddle v. Garrison** which says that " 'third-party interference
with at-will employment relationships[ ] states a claim for relief under § 1985(2).' ").

Doc#1830                                  19

an employer into firing an employee is the classic case of interfering with employment relations.[57]

In the instant case there was no "third-party interference with an at-will employment relationship," nor did plaintiff suffer any "economic injury" by way of defendants' actions. First, there is no evidence that the Board anticipated the renewal of plaintiff's contract prior to defendants' alleged campaign to persuade the Board to terminate plaintiff.  In fact, the record indicates to the contrary.  A cursory review of the Employment Contract which settled plaintiff's prior lawsuit reveals that the Board bargained for a stipulation whereby plaintiff's employment would terminate absent both a favorable performance review and an affirmative act of the Board:

> The Board hereby employs Dr. Ralph Slaughter to serve as President of the Southern University System and Secretary to the Board of Supervisors of Southern University…. This agreement is issued for the fiscal year (July 1 – June 30) commencing July 1, 2007 for a fixed term of two (2) years ending June 30, 2009. This agreement shall expire and terminate on June 30, 2009. Contingent upon a favorable performance review and affirmative act of the Board of Supervisors on or before April 1, 2009, this contract may be extended.[58]

Thus, in exchange for an additional two years of employment with a significant compensation package, plaintiff agreed to terminate the claims in the prior lawsuit and accept the fact that his employment would expire on its own terms unless a majority of the Board members could be persuaded to affirmatively act to extend

---

[57] **Kinney**, 367 F.3d at 353.

[58] Record Document No. 16-4, Defendant's Exhibit B, p. 1.

his contract before April 1, 2009.[59]  Because the evidence indicates that the Board did not anticipate the renewal of plaintiff's contract prior to the commencement of defendant's alleged conspiracy, and because plaintiff has set forth no evidence to the contrary, it cannot be said that defendants coerced the Board into firing plaintiff.

Furthermore, the defendants herein took no affirmative acts to coerce the board into firing the plaintiff or to interfere with plaintiff's employment prior to the completion of his employment contract. Unlike **Kinney**, wherein the Police Officials interfered with plaintiff's employment by boycotting the plaintiffs' classes and demanding that plaintiffs be fired prior to the completion of their employment contracts, there is absolutely no indication that either Atkins or Anderson sought to induce the Board to terminate plaintiff's employment prematurely or that they desired to interfere, or actually did interfere, with the fulfillment of plaintiff's "Employment Contract."[60]

---

[59] See,e.g., Record Document No. 16-2, Defendant's Memorandum in Support of Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, p. 8, n. 1.

[60] Plaintiff submits his own Declaration to prove that defendants may have prematurely interfered with his contractual relationship. In his Declaration, plaintiff stated that as a direct result of defendant Board's actions in connection with his suit for unpaid wages, the Board interfered with and has impaired his ability to obtain his retirement on the basis of the full amount of his contractual income. Plaintiff also stated that Montgomery spear-headed a change that significantly altered the manner in which he was to be evaluated and that Montgomery and Anderson implemented a policy in 2008 which required that "any employees earning over $50,000/year and all PAP's (Personnel Action Forms) were required to be submitted for approval to the Board of Supervisors." See Record Document No. 84-2, Exhibit F, Declaration of Plaintiff.  These are the plaintiff's own conclusory allegations and no evidence has been submitted to support them.  Plaintiff's belief is not evidence that creates a triable fact issue; therefore, summary judgment is proper. See **RSR Corp. v. International Ins. Co.,** 2010 WL

Doc#1830                                  21

Even assuming that defendants did, in fact, interfere with plaintiff's employment relationship, the interference of which plaintiff complains is not compensable under the Louisiana law of tortious interference with a contract and is therefore not compensable under § 1985.  In **Haddle v. Garrison**, the United States Supreme Court premised § 1985 liability on the existence of the Common Law and Georgia tort of third-party interference with an at-will employment relationship.[61]  In stark contrast to the protections against third-party interference with at-will employment relations recognized in **Haddle**, the Louisiana Supreme Court has recognized only an extremely limited cause of action for tortious interference with contract.[62]

In **9 to 5 Fashions, Inc. v. Spurney**, 538 So.2d 228 (La.1989), the Court explicitly rejected the broad sweep of the Common Law doctrine of interference with contractual relationships:

It is not our intention, however, to adopt whole and undigested the fully

_____

2891606, * 4 ("conclusory  statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim) (citations omitted).

[61] **Haddle**, 525 U.S. at 126-127 ("We hold that the sort of harm alleged by petitioner here-essentially third-party interference with at-will employment relationships-states a claim for relief under § 1985(2). Such harm has long been a compensable injury under tort law, and we see no reason to ignore this tradition in this case... Thus, to the extent that the terms 'injured in his person or property' in § 1985 refer to principles of tort law, we find ample support for our holding that th e harm occasioned by the conspiracy here may give rise to a claim for damages under § 1985(2).").

[62] **9 to 5 Fashions v. Spurney**. 538 So.2d 228 (La.1989).

expanded common law doctrine of interference with contract . . . [i]n the present case we recognize . . . only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person.[63]

Since the decision in **9 to 5**, numerous cases in the United States Fifth Circuit and various Louisiana courts of appeal have uniformly recognized the narrow scope of Louisiana's tortious interference action.[64]  Indeed, the Fifth Circuit observed that even the Louisiana appellate courts purporting to "expand" the cause of action have done so within the limited confines of **9 to 5**.[65]

In the instant case, plaintiff makes no allegations that a corporate officer intentionally and unjustifiably interfered with a contract between his corporate employer and himself.  Furthermore, plaintiff alleges no individualized duty existing between himself and defendants that could give rise to the type of delictual liability established by the Louisiana Supreme Court in **9 to 5**. Therefore, plaintiff's allegations do not fall within the narrow parameters of Louisiana's tortious interference cause of action, and plaintiff could not be "injured

---

[63] **9 to 5 Fashions**, 538 So.2d at 234.

[64] See, e.g., **Egorov, Puchinsky, Afanasiev, & Juring v. Terriberry, Carroll and Yancey**, 183 F.3d 453, 457 (5th Cir.1999); **American Waste & Pollution Control Co. v. Browning-Ferris, Inc.**, 949 F.2d 1384, 1386-87 (5th Cir.1991); **White v. White**, 641 So.2d 538, 541 (La. App. 3d Cir.1994); **Tallo v. The Stroh Brewery Co.**, 544 So.2d 452, 453-55 (La.App. 4th Cir.1989).

[65] See **Egorov, Puchinsky, Afanasiev, & Juring**, 183 F.3d at 457 (citing **America's Favorite Chicken Co. v. Cajun Enter.**, 130 F.3d 180, 184 (5th Cir.1997); **Guilbeaux v. The Times of Acadiana**, 693 So.2d 1183, 1186 (La.App. 3d Cir.1997); **Neel v. Citrus Lands of Louisiana, Inc.**, 629 So.2d 1299, 1301 (La.App. 4th Cir.1993).

in his person or property" for purposes of § 1985.

The fact that defendants may have referred to the Board's act of voting not to renew plaintiff's contract as "terminating" the plaintiff is of no consequence. The Board was never faced with a decision to terminate plaintiff, there is no evidence to suggest that defendants "maliciously and without justifiable cause, induced [the Board] to discharge [plaintiff], by means of false statements, threats or putting in fear, or perhaps by means of malevolent advice and persuasion,"[66] the interference of which plaintiff complains is not compensable under the Louisiana law of tortious interference with a contract and is therefore not compensable under § 1985, and there is certainly no evidence that the Board anticipated that plaintiff's contract would be renewed. Therefore, the Court finds that plaintiff suffered no cognizable injury under the first two clauses of § 1985(2).

### b. Plaintiff Has Failed to Show The Requisite Nexus Between The Conspiracy and Plaintiff's Testimony or Appearance in Federal Court

Plaintiff alleges that the defendants conspired to terminate him because he engaged in activity protected by Title VII (filed EEOC and LCHR Charges in 2007), filed his original lawsuit, testified and offered evidence in connection with that lawsuit and before a Federal Grand Jury, made reports, protests, and complaints to the media and state officials about sexual harassment, he refused to fire Ag Center Chancellor Leodrey Williams or order a special audit to find

---

[66] **Haddle**, 525 U.S. at 126, (quoting 2 T. Cooley, Law of Torts 589-591 (3d ed. 1906)).

"something on him to terminate his employment," and because an injunction was issued by this Court.

The plain language of 42 U.S.C. § 1985 is applicable only to conspiracies designed to deter plaintiff from, or to injure his person or property on account of his having *attended or testified* in court of the United States. To be sure, in **Kinney**, the Fifth Circuit "emphasize[d] that the statute does not create liability for every adverse action taken against a witness after the witness testifies in a federal case. In addition to the requirement that there be a cognizable injury to the witness or his property (discussed above), the statute itself contains another limiting principle: the conspirator must threaten or injure the witness 'on account of his having so attended or testified'-that is, *because of, and by reason of, a person's participation as a witness.*"[67]  Therefore, the Court must determine, in viewing the facts in the light most favorable to plaintiff, whether there is sufficient evidence for a jury to conclude that the defendants acted to punish the plaintiff because of, and by reason of, his participation as a witness in his prior lawsuit or in the Federal Grand Jury.

Concerning the foregoing issue, Plaintiff asserts the following claims as they relate to Atkins and Anderson:

> "Atkins and Anderson were motivated to continue the conspiracy, even beyond their initial Board terms, to avenge themselves on account of Dr. Slaughter's whistle-blowing of their sexual harassment activities.

---

[67] **Kinney**, 367 F.3d at 355.

*   *   *   *

"From an evidentiary standpoint, the Affidavits attached hereto and filed of
record thus far in these proceedings clearly show that the four (4)
conspirators wanted Dr. Slaughter fired and publicly humiliated because he
brought to light their sexual harassment and their failings to address the
issues of illegal sexual harassment in the workplace. Indeed, each of the
pieces of evidence offered demonstrate a clear tie between the Federal
testimony and the ensuing events... Atkins and Anderson clearly conspired
and worked diligently to ensure that Dr. Slaughter was "punished" because
he blew the whistle on each for sexual harassment in the workplace...
In his Affidavit, Mr. Taylor... confirms that Anderson, even after he left the
SU Board, went to a number of Board members and secured their
commitment to humiliate and terminate the plaintiff because Dr. Slaughter
testified in 2007 that Anderson had sexually harassed a number of women
in the workplace."

In support of these assertions, plaintiff cites his own Declaration was well

as the Affidavits of Joseph Shelton, Leonard London, Cedric Upshaw, Jamal

Taylor, Diane Craig, and Shanna Little. The Court has carefully reviewed each of

the documents and finds that there is insufficient evidence for a jury to conclude

that either Atkins or Anderson acted to punish plaintiff because plaintiff had

testified in his lawsuit or before a Grand Jury.

In his affidavit, Shelton stated that he testified that he had filed a grievance

for sexual harassment against Atkins during plaintiff's lawsuit. Shelton further

stated that Atkins was "upset with [him] because [he] refused to withdraw [his]

prior testimony" and demanded that he recant his testimony. The Declaration of

Plaintiff notes that plaintiff was repeatedly approached by Clayton regarding his

filing of the 2007 lawsuit, his EEOC/LCHR charge, and his testimony in the 2007

proceeding and that Clayton told him that he "would ensure that [he] was punished and fired for the 2007 litigation." Leonard London recounted that "Clayton told [him] that [Clayton] was going to clear Johnny Anderson's name from those harassment charges." Shanna Little stated that Brandon Dumas told her "we are going to get rid of [Dr. Slaughter] because we couldn't last time" and that "Mr. Anderson's gonna finally get his due we're going to take care of it." Significantly, none of these statements tend to show that either Atkins or Anderson conspired against plaintiff because of *plaintiffs'* testimony in Federal Court. Although the statements made in the affidavits of Upshaw[68] and Craig[69] may show that Atkins had a motive to terminate plaintiff based upon plaintiff's testimony in the 2007 proceeding, they are inadmissable hearsay and may not be used as evidence on summary judgment.[70] The only relevant evidence that plaintiff offers is Jamal Taylor's statement that Anderson told him that the things plaintiff said in Court about him were "unfounded" and that plaintiff needed to be gone. Nevertheless, based upon this single statement, no reasonable juror could

---

[68] Cedric Upshaw stated that "Clayton told [him] that Atkins repeatedly talked to [Clayton] about how "Ralph" had made [Atkins and Clayton] look bad because of [plaintiff's] testimony in 2007 in Federal Court."

[69] Diane Craig stated that "Board member Jamal Taylor and several other Board members, prior to March 27, 2009, told [her] that Atkins had meetings with Anderson and other Board members and that Dr. Slaughter had to go and that they were planning to get rid of Dr. Slaughter because of the 2007 litigation."

[70] Evidence on summary judgment may be considered to the extent it is not based on hearsay or otherwise excludable at the time of trial. **Fowler v. Smith**, 68 F.3d 124, 126 (5th Cir.1995).

infer that Anderson acted to punish plaintiff because plaintiff had testified in his prior lawsuit or before a Grand Jury.[71] Therefore, Jamal Taylor's statement is insufficient to create a triable issue of material fact, and plaintiff's claim cannot survive summary judgment.[72]

---

[71] Anderson sets forth a list of eighteen reasons that he opposed the retention of plaintiff as President of Southern University. See Record Document No. 24, p. 3. In support of these contentions, Anderson submits the Oral Reasons for Judgement made by Judge Timothy Kelley of the Nineteenth Judicial District Court, Parish of East Baton Rouge, in a case similar to the instant suit. See Record Document No. 65-2, Exhibit A. Judge Kelley's Oral Reasons for Judgment contained the following findings of fact:

> "Now, the weekend prior to his last day[,] Dr. Slaughter emptied his office and the stadium suite of just about anything that wasn't nailed down, and he even took things that were nailed of screwed to the walls and windows. Clearly, he took a great deal to which he had no claim or right. While this is not a suit for conversion or theft, this fact must be recognized and cannot be understated. Southern University, from the first day after his departure, attempted to inventory and calculate the value of the property inappropriately taken by Dr. Slaughter.

> Dr. Slaughter himself created chaos with regard to the items taken, such chaos that it was difficult for Southern University to determine just what had been taken without authority or justification by Dr. Slaughter...

> \*   \*   \*   \*   \*

> Now, this is not a trial for theft or conversion, but throughout the course of the last four days, this Court has been shocked to learn of the abuses of authority and the abuse of position of power that Dr. Slaughter has exhibited during his tenure. His testimony from the stand was the least credible testimony I have heard in thirteen years as a Judge. It's clear at this time that a very, very dark era at Southern University passed on June 30th of 2009[,] when Dr. Slaughter finally left that campus."

This Court accepts the factual findings of Judge Kelley and finds that several of Anderson's reasons for opposing the retention of plaintiff as President of Southern University are clearly supported by the record (lack of credibility and trustworthiness, abuse of authority, inability to cooperate with others, fixation on initiating conflict among University leaders and staff, loss of respect among his peers). In light of this evidence, no reasonable juror could infer that Anderson acted to punish plaintiff because plaintiff had testified in his prior lawsuit or before a Grand Jury.

[72] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) ("[T]here is no material fact issue unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party'")(quoting **Anderson v. Liberty Lobby, Inc.**, 477 U.S.

## IV. Intentional Infliction of Emotional Distress

Under Louisiana law, an intentional infliction of emotional distress claim requires that 1) the conduct of the defendant be "extreme and outrageous;" 2) the plaintiff suffer severe emotional distress; and 3) the defendant desire to inflict the emotional distress or know that severe emotional distress would be substantially certain to result from his conduct.[73]

In order to be "extreme and outrageous," the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[74] "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."[75] "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and

_____

242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[73] **White v. Monsanto Co.**, 585 So.2d 1205, 1209 (La.1991).

[74] **White**, 585 So.2d at 1209.

[75] **Id.** at 1209-10 (citing RESTATEMENT (SECOND) OF TORTS, comment d, § 46).

unkind."[76]  Therefore, "proving outrageous conduct by the defendant" is a "heavy burden" to be met by the plaintiff.[77]  Louisiana jurisprudence affords greater protection to a plaintiff in an employment setting where the alleged wrongdoer is a supervisor with authority over the plaintiff.[78] Nevertheless, in a workplace environment, intentional infliction of emotional distress claims are usually "limited to cases involving a pattern of deliberate, repeated harassment over a period of time."[79]

Second, "[t]he distress suffered must be such that no reasonable person could be expected to endure it."[80] "Liability arises only where the mental suffering or anguish is extreme."[81]

Finally, the intent element requires that the defendant either 1) desire to inflict severe emotional distress or 2) know that severe emotional distress is certain or substantially certain to result from his conduct.[82] Subjective intent may

_____

[76] **Deus v. Allstate Ins. Co.**, 15 F.3d 506, 514 (5th Cir. 1994)(citing RESTATEMENT (SECOND) OF TORTS § 46, comment d).

[77] **Succession of Harvey v. Dietzen**, 716 So.2d 911, 917 (La.Ct.App. 4th Cir.1998).

[78] **White**, 585 So.2d 1205.

[79] **Id.** at 1210.

[80] **White**, 585 So.2d at 1210.

[81] **Id.**

[82] **White**, 585 So.2d at 1209.

be presumed from the circumstances.[83] The conduct must be intended or calculated to cause severe emotional distress and not some lesser degree of fright, humiliation, embarrassment, worry, or the like.[84]

Plaintiff claims that Atkins, Anderson, and other members of the Board acted in concert to publicly humiliate and inflict emotional distress upon him. In support of this claim, plaintiff alleges that the following acts were taken to publicly humiliate and inflict emotional distress upon him: (1) His young child was filmed on the news; (2) he was publicly accused of misusing funds; and (3) he was summoned at the March 27, 2009, Board meeting to call the vote to terminate himself in public.  Defendants argue that plaintiff has failed to allege any extreme or outrageous conduct, to demonstrate this his distress is severe, and to prove that defendants intended to cause him severe emotional distress.  Defendants' arguments are persuasive.

Plaintiff points to no particular acts of Atkins and Anderson that were designed to humiliate him. There is no evidence that either Atkins or Anderson encouraged the media to film plaintiff's child, publicly accused plaintiff of misusing funds,[85] or that they had anything to do with summoning plaintiff to the March 27,

---

[83] **Taylor v. State**, 617 So.2d 1198, 1204-05 (La.App. 3 Cir.1993).

[84] **White**, 585 So.2d at 1210.

[85] In his complaint, plaintiff alleges that "a purportedly 'anonymous' letter was received by defendants Clayton and Montgomery accusing Petitioner of illegally having a Southern University employee work for him at his personal residence." Record Document No. 1, Plaintiff's Complaint, ¶ 23. There is absolutely no evidence suggesting that either Atkins or Anderson

2009, Board meeting so that plaintiff could "call the vote to terminate himself in public." Furthermore, to the extent that plaintiff's intentional infliction of emotional distress claim is premised upon the meetings between defendants or any other interference with plaintiff's employment contract, such behavior does not rise to the level of extreme and outrageous conduct needed to support a claim under the Louisiana tort of intentional infliction of emotional distress.

The Fifth Circuit has recognized that the rough-and-tumble of daily business life "contemplate[s] a degree of teasing and taunting that in other circumstances might be considered cruel and outrageous."[86] In **Deus v. Allstate Ins. Co.**, the Fifth Circuit explained that "[w]hat actions are extreme and outrageous will differ according to context."[87] The **Deus** Court, applying Louisiana law, noted that "to manage its business properly, every employer must on occasion review, criticize, demote, transfer, and discipline employees."[88] Further, the Court acknowledged "that it is not unusual for an employer, instead of directly discharging an employee, to create unpleasant and onerous work conditions designed to force an employee to quit, i.e., 'constructively' to discharge the

_____

authored or released this letter.

[86] **Deus v. Allstate Ins. Co.**, 15 F.3d 506, 514 (5th Cir.1994) (quoting **Wilson v. Monarch Paper Co.**, 939 F.2d 1138, 1143 (5th Cir.1991).

[87] **Deus v. Allstate Ins. Co.**, 15 F.3d 506, 514 (5th Cir.1994) (applying Louisiana law).

[88] **Id.** (citing Wilson, 939 F.2d 1138).

employee."[89] It explained, however, that "although this sort of conduct often rises to the level of illegality, except in the most unusual cases it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes 'extreme and outrageous' conduct."[90] The Court further noted that "an employer may call upon an employee to do more work than other employees, use special reviews on a particular employee and not on others to downgrade his performance, and institute long-range company plans to move younger persons into sales and management positions without engaging in extreme and outrageous conduct."[91]

Applying the guidance set forth in **Deus** to the instant case, no reasonable juror could find that any of defendants' acts could rise to the level of extreme and outrageous conduct.  Accordingly, plaintiffs intentional infliction of emotional distress claims against Atkins and Anderson must be dismissed.

## V. Abuse of Rights

Plaintiff alleges that "defendants possessed the right to deliberate and consider issues in connection with their affiliation with the Board, said defendants abused their rights and are thus liable unto Petitioner for the tort of abuse of rights."  In support of this position, plaintiff insinuates that he was terminated from his position, citing **Walther v. National Tea Co.**,  848 F.2d 518, 519-520 (5th

---

[89] **Id.**

[90] **Id.**

[91] Id. at 515.

Cir.1988) and **Coleman v. Sch. Bd. of Richland Parish**, 418 F.3d 511, 523-524 (5th Cir. 2005) .  Neither case is dispositive.

"The doctrine of abuse of rights has been invoked sparingly in Louisiana."[92] Under Louisiana's abuse of rights doctrine, a party will be held liable for exercising a legal right if there is "(1) no benefit to the person exercising the legal right, and (2) damage or injury to the person against whom the legal right is asserted."[93]  Furthermore, "[i]f a party has a 'legitimate and serious interest' in exercising the right, the doctrine provides no basis for recovery."

From the foregoing recitation of the law, it is evident that the doctrine of abuse of rights presupposes the possession and exercise of a right.[94]  Plaintiff has introduced no evidence that either Atkins or Anderson possessed the right to deliberate and consider issues in connection with the renewal or non-renewal of plaintiff's contract.  In fact, the record clearly indicates that neither Atkins nor Anderson were members of the Board or attended the Board meeting when the

---

[92] **Steier v. Heller**, 732 So.2d 787, 790 (La. App. 2d Cir. 1999) (citing **Massachusetts Mut. Life Ins. Co. v. Nails**, 549 So.2d 826 (La.1989)).

[93] **Lambert v. Maryland Cas. Co.**, 403 So.2d 739, 757 (La.App.1981), aff'd, 418 So.2d 553 (La.1982).

[94] See, e.g., **Ill. Cent. Gulf R.R. Co. v. Int'l Harvester Co.**, 368 So.2d 1009, 1014 (La.1979) (the abuse of rights doctrine is applied to prevent the holder of rights or powers from exercising those rights if the predominant motive for the exercise of the right was to cause harm).

vote was taken not to renew plaintiff's contract.[95]

Moreover, as previously mentioned, the doctrine requires "damage or injury to the person against whom the legal right is asserted."  Plaintiff was not terminated from his position – his employment contract was simply not renewed. No Louisiana court has found a cause of action under the doctrine of abuse of rights for the failure to renew an employment contract.  This Court reiterates that the doctrine has been applied only in limited circumstances[96] and therefore, in making an **Erie** guess,[97] the Court refuses to expand this cause of action to encompass a claim for failure to renew an employment contract.  Accordingly, plaintiff's abuse of rights claims against Atkins and Anderson must be dismissed.

## CONCLUSION

Having carefully reviewed the record, the law, and the arguments of the parties, the Court finds that plaintiff's claims are not barred by the doctrine of *res judicata,* defendants Atkins and Anderson acted under color of law for purposes of § 1983, and that summary judgment is proper on plaintiff's 42 U.S.C. § 1985, intentional infliction of emotional distress, and abuse of rights claims. Accordingly, for the foregoing reasons assigned,

---

[95] Record Document No. 14-2, Exhibit A, Affidavit of Dale Atkins; Record Document No. 16-4, Exhibit C, Affidavit of Johnny Anderson.

[96] **Steier v. Heller**, 732 So.2d 787, 790 (La. App. 2d Cir. 1999) (citing **Massachusetts Mut. Life Ins. Co. v. Nails**, 549 So.2d 826 (La.1989)).

[97] **Erie R.R. v. Tompkins**, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)

IT IS ORDERED that Defendants Atkins' and Anderson's Motions for Summary Judgment (Docs. No. 14 & 16) be **DENIED** insofar as they seek dismissal of plaintiff's claims by reason of *res judicata.*

IT IS FURTHER ORDERED that Defendants Atkins' and Anderson's Motions for Summary Judgment (Docs. No. 14 & 16) be **DENIED** insofar as they seek dismissal of plaintiff's § 1983 claims.

IT IS FURTHER ORDERED that Defendants Atkins' and Anderson's Motions for Summary Judgment (Docs. No. 14 & 16) be **GRANTED** insofar as they seek dismissal of plaintiff's § 1985, intentional infliction of emotional distress, and abuse of rights claims.

Baton Rouge, Louisiana this 21st day of September, 2010.

RALPH E. TYSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA