**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

RALPH SLAUGHTER                               CIVIL ACTION NO. 3:09-00190

VERSUS                                                 JUDGE ELIZABETH ERNY FOOTE

DALE ATKINS ET AL.                         MAGISTRATE JUDGE KAREN HAYES

## MEMORANDUM RULING

Before the Court are the following motions: Motion for Summary Judgment, filed by Defendant Dale Atkins ("Atkins") and adopted by Defendant Johnny Anderson ("Anderson") [Record Documents 160 and 161, respectively]; and Motion for Summary Judgment, filed by Defendant Atkins and adopted by Defendant Anderson [Record Documents 181 and 182, respectively].[1] The motions are opposed by Plaintiff, Ralph Slaughter ("Slaughter") [Record Document 199]. Defendants Atkins and Anderson replied [Record Document 202-3],[2] to which Slaughter then filed a sur-reply [Record Document 214]. For the reasons that follow, the Defendants' motions are hereby **GRANTED**.

---

[1] As Record Documents 181 and 182 appear to simply be repetitive filings of the exact same motions found at Record Documents 160 and 161, this ruling hereinafter refers only to Record Documents 181 and 182. However, references to Record Documents 181 and 182 are intended to apply with equal force and effect to Record Documents 160 and 161. Similarly, references to Record Document 181 are intended to apply with equal force and effect to Record Document 182, as the latter is merely a full adoption of the former. [*See* Record Document 180, Minutes of October 3, 2011 telephone status conference held by Judge Foote, p. 2 ("Defendants Atkins and Anderson have filed identical Motions for Summary Judgment on the claims that are still pending against them (the 1983 claims). [Record Documents 160 and 161]. The Court dismissed all other claims against these Defendants in its September 21, 2010 Ruling. [Record Document 158].") As Record Documents 181 and 182 are the exact same as Record Documents 160 and 161, the Court's earlier assessment of those two motions applies with equal weight to Record Documents 181 and 182.].

[2] Defendant Atkins filed a Motion for Leave to File a Reply [Record Document 202]. That motion was granted by this Court [Record Document 204], and the Reply itself was intended to be filed at [Record Documents 205 and/or 207]. Due to a docketing error by the clerk, the image of Defendant Atkins' reply was never individually docketed; therefore, the Court references the filing of the proposed reply for substantive purposes, which can be found at Record Document 202-3. Likewise, Defendant Anderson filed a motion to adopt Atkins' reply [Record Document 203], which was granted [Record Document 206].

## BACKGROUND FACTS[3]

The instant litigation arises out of the termination of Slaughter from his former position as President of the Southern University System ("Southern") and the alleged retaliation against Slaughter by the Board of Supervisors of Southern University (the "Board") and some of its members. This case follows a long procedural history, with relevant factual events dating back to 2006. For purposes of this ruling, the Court will attempt to elucidate the factual and procedural path that preceded the instant ruling.

Slaughter was appointed President of Southern on April 1, 2006. The office of the President reports directly to the Board, which consists of sixteen members, appointed by the Governor of Louisiana and subject to confirmation by the Louisiana State Senate. The Defendants in the instant lawsuit consist of the Board itself, as well as three past members and one current member of the Board.[4]

While employed as the President of Southern, Slaughter filed a lawsuit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. That suit was filed against then-Defendants: the Board; the Honorable Kathleen Blanco, individually and in her official capacity as Governor of the State of Louisiana; Dale Atkins, individually and in her official capacity as acting chair and member of the Board; and John Joseph, individually and in his official capacity as a member of the Board.[5] On May 30, 2007, the Defendants

---

[3] This section includes factual recitations made in previous rulings by the Court, as well as allegations contained in the complaint and supplemental and amending complaint, and statements of fact included in the parties' briefing.

[4] Defendants Atkins, Anderson, and Lea Polk-Montgomery served on the Board in the past, including times relevant to the facts giving rise to this litigation, while Defendant Tony Clayton currently sits on the Board.

[5] USDC Civil Docket No. 3:07-cv-00379-RET-CN (M.D. La.).

removed the action to this court, the United States District Court for the Middle District of Louisiana. In that suit, Slaughter alleged, *inter alia*, that he was illegally retaliated against by the Defendants for reporting, protesting, and complaining about sexual harassment in the workplace and for providing testimony and evidence before a federal grand jury, all in violation of 42 U.S.C. §§ 1983 and 1985, Title IX,[6] Louisiana's anti-reprisal statute,[7] and Louisiana tort laws.

Ultimately, that suit (hereinafter referred to as "the original Federal litigation") culminated in a settlement, by which the parties executed two documents: (1) a Settlement Agreement and Authentic Act of Release, and (2) an Employment Contract between the Board and Slaughter.[8] The Settlement Agreement required Slaughter to dismiss any and all claims which he had or may have against the then-Defendants and Johnny Anderson.[9] The Settlement Agreement was also expressly conditioned upon execution of the Employment Contract, which provides, in relevant part, as follows:

> The Board hereby employs Dr. Ralph Slaughter to serve as President of [Southern] and Secretary to [the Board].... This agreement is issued for the fiscal year (July 1 – June 30) commencing July 1, 2007 for a fixed term of two (2) years ending June 30, 2009. This agreement shall expire and terminate on June 30, 2009. Contingent upon a favorable performance review and affirmative act of [the Board] on or before April 1, 2009, this contract may be extended.[10]

---

[6] Title IX is codified at 20 U.S.C. § 1681, *et seq.*

[7] La. R.S. 23:967.

[8] *See* Record Document 181-2, p. 2, ¶ 4; Record Document 158 (prior ruling of the Court).

[9] *See* Record Document 158, pp. 2-3; *see also* Record Document 181-2, p. 2, ¶ 4, which references the substance of the agreement.

[10] *See* Record Documents 158, p. 3 and 159, p. 4 (USCA Docket No. 10-30258, Mandate issued October 29, 2010).

Slaughter signed both of these contracts, which then became effective upon the dismissal with prejudice of the original Federal litigation.[11] Slaughter then served the two-year term contemplated in the Employment Contract and was given a favorable performance review. However, the Board met on March 27, 2009, and by a vote of eleven to five, elected not to renew or extend Slaughter's contract beyond its stated expiration date of June 30, 2009, such that Slaughter's employment with Southern would cease on that date.[12] Thereafter, on April 3, 2009, Slaughter filed the instant suit, alleging that the Defendants herein conspired to punish him and force him from his position as President of Southern, in retaliation for the filing of the original Federal litigation, for engaging in activity protected by Title VII, and for providing testimony and evidence in connection with the original Federal litigation.[13] Specifically, Slaughter alleges that these Defendants have violated Title VII,[14] 42 U.S.C. §§ 1983 and 1985(2) and (3), as well as state laws for the torts of intentional infliction of emotional distress and abuse of rights.[15]

The Court previously dismissed all other claims against these Atkins and Anderson, the two Defendants who filed the pending Motions. The Court previously ruled that

---

[11] Record Document 16-3, Exhibit "A", p. 8, ¶15.

[12] Record Document 158, p. 3.

[13] Record Document 42, pp. 1-2, ¶ 2, which supplements and amends ¶ 17 on p. 5 of the original complaint [Record Document 1].

[14] Title VII of the Civil Rights Act is codified at 42 U.S.C. § 2000e, *et seq.*

[15] *See* Record Documents 1, 42, and 158; *but see* Record Document 158, wherein all claims, other than those arising under 42 U.S.C. §1983, against Defendants Atkins and Anderson were dismissed. [Record Document 158, p. 14 ("...all §1985 claims against Atkins and Anderson must fail."); p. 33 ("...no reasonable juror could find that any of Defendants' acts could rise to the level of extreme and outrageous conduct... plaintiff[']s intentional infliction of emotional distress claims against Atkins and Anderson must be dismissed."); and p. 35 ("No Louisiana court has found a cause of action under the doctrine of abuse of rights for the failure to renew an employment contract...plaintiff's abuse of rights claims against Atkins and Anderson must be dismissed.").

Slaughter's Section 1983 claims could survive summary judgment, in that Slaughter had "alleged facts which, if believed, would be sufficient to establish that Atkins and Anderson reached an agreement with Clayton and Montgomery such that they acted under color of law for purposes of § 1983."[16] The Court expressed no opinion as to whether the Defendants reached an understanding to deprive Slaughter of his constitutional rights or whether Slaughter suffered an actual deprivation of his constitutional rights.[17] Accordingly, Defendants Atkins and Anderson now move for summary judgment on these Section 1983 claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

---

[16] Record Document 158, p. 13.

[17] Record Document 158, p. 11 at n. 29 and p. 13 at n. 38.

[18] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. Matsushita Elec. Indus.l Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted). Such a showing requires the non-moving party to come forward with "specific facts" showing there is a genuine issue for trial. Id. at 587. This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

**LAW AND ANALYSIS**

Defendants Atkins and Anderson now move for summary judgment on plaintiff's remaining Section 1983 claims, wherein Slaughter argues that they violated his First Amendment and Due Process rights by not renewing his employment contract with Southern.

As a preliminary matter, Slaughter argues that this Court should defer or deny these Motions under Federal Rule of Civil Procedure 56(d) because Defendants Atkins and Anderson allegedly have failed to respond to this Court's subpoena duces tecum for various telephone records, emails and text messages regarding potential evidence of a conspiracy between Atkins and Anderson and the other Defendants. Slaughter has filed two separate Motions for Contempt, Sanctions and Adverse Inference [Record Documents

186 and 220] on this matter. The Court declines to defer or deny these Motions for Summary Judgment under Rule 56(d) because it finds the information sought by Plaintiff is not relevant to the issues presented by Defendants' Motions for Summary Judgment. Additionally, Slaughter argues that Defendants did not file a valid Statement of Uncontested Facts as required by Rule 56. The Court finds this argument to be unfounded.

## I.     First Amendment Claim

A successful First Amendment claim made under Section 1983 requires that a plaintiff show that (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency, and (4) his speech motivated the adverse employment action. Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004). A Plaintiff must satisfy all four requirements to recover for a First Amendment retaliation claim. Harris v. Victoria Idep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999). Defendants contend that Slaughter has not suffered an adverse employment action, that his interest in commenting on matters of public concern are outweighed by the government's interest in promoting efficiency, and Slaughter's speech was not the motivating cause of any potential adverse employment action.[19]

Assuming, *arguendo*, that Slaughter is able to satisfy the first three requirements of a prima facie case, the last element requires further analysis. The last element of the test is one of causation. Johnson, 369 F.3d at 830. "[I]f the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action." Id. In order to prevail, a Plaintiff must be able to

---

[19] Record Document 181-1, p. 7

show that he engaged in protected conduct and that the protected conduct was a substantial or motivating factor in his discharge. Beattie v. Madison County School Dist., 254 F.3d 595, 601 (5th Cir. 2001). The burden then shifts to the defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct. Id.(citing Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The question of whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact, ordinarily rendering summary disposition inappropriate. Click v. Copeland, 970 F.2d 106, 113 (5th Cir. 1992). However, if the employer is able to show, by a preponderance of the evidence, that it would have taken the same adverse employment action against the employee even in the absence of the employee's protected conduct, then the protected conduct in question does not amount to a constitutional violation justifying remedial action. Mooney v. Lafayette County Sch. Dist., 538 Fed. Appx. 447, 455 (5th Cir. 2013).

Slaughter cites his own Declaration and the Affidavits of Joseph Cedric Shelton, Leonard London, Cedric Upshaw, Jamal Taylor, Diane Craig, Shanna Little, Cynthia Robinson, and Tony Clayton as evidence of the causal link between his alleged adverse employment action and his testimony in the original Federal litigation.[20] As noted by Judge Tyson in his prior Ruling, the Affidavits of Joseph Shelton, Leonard London, Cedric Upshaw, Jamal Taylor, Diane Craig, and Shanna Little either do not give evidence of a

---

[20]Record Document 199, Exhibits "A"-"O".

conspiracy to terminate the Plaintiff because of *Plaintiff's* testimony or are inadmissible hearsay.[21]

Likewise, the Affidavit of Cynthia Robinson, the deposition testimony of Tony Clayton, and the deposition testimony of Matthew Butler do not provide evidence that Slaughter suffered an adverse employment action because of *his testimony* in the original Federal litigation.[22] The only relevant evidence provided by Slaughter is Jamal Taylor's statement that Anderson told him the Plaintiff's testimony was "unfounded" and that the Plaintiff "needed to be gone".[23] This statement by Jamal Taylor is the only evidence Slaughter provides to substantiate his claim that his testimony in the original Federal litigation was the substantial or motivating factor in any adverse employment action by the defendants. Primarily, Defendant offers only innuendo, with the suggestion of nefarious dealings amongst the defendants, but without any evidence to support his claims.

On the other hand, Defendant Anderson has submitted eighteen reasons why he opposed rehiring Slaughter for his position as President of Southern University, including poor verbal communication skills, poor relationship building with faith-based institutions, and a focus on personal gain, rather than the betterment of the University.[24] As evidence

---

[21] Record Document 158, p. 27. The Court notes that these Affidavits are the same evidence presented to Judge Tyson for his review in the prior Ruling on Summary Judgment.

[22] Record Document 199-1, Exhibits "E", "G", and "O". Cynthia Robinson testifies about her experience at Southern after testifying in the prior Federal litigation but does not reference any retaliation against Slaughter. Tony Clayton testifies that Defendant Anderson made a suggestion about a possible replacement for Slaughter and that he spoke with other Board members about potential interim Presidents prior to the March 27, 2009 Board meeting. Matthew Butler testified that Slaughter did not attend the Essence festival in 2009. None of the above testimony provides evidence that the motivation for any adverse employment action Slaughter suffered was his testimony in the prior Federal litigation.

[23] Id. at Exhibit "F".

[24] Record Document 24.

to support his conclusions, Anderson submitted to the Court the Oral Reasons for Judgment made by Judge Timothy Kelley of the Nineteenth Judicial District Court, Parish of East Baton Rouge.²⁵ Judge Tyson, in his prior Ruling, accepted Judge Kelley's factual findings and stated that "several of Anderson's reasons for opposing the retention of Plaintiff as President of Southern University are clearly supported by the record (lack of credibility and trustworthiness, abuse of authority, inability to cooperate with others, fixation on initiating conflict among University leaders and staff, loss of respect among his peers.)".²⁶ Specifically, Judge Tyson cited the following portion of Judge Kelley's Oral Reasons for Judgment:

> Now, the weekend prior to his last day[,] Dr. Slaughter emptied his office and the stadium suite of just about anything that wasn't nailed down, and he even took things that were nailed down or screwed into walls and windows. Clearly, he took a great deal to which he had no claim or right. While this is not a suit for conversion or theft, the fact must be recognized and cannot be understated. Southern University, from the first day after his departure, attempted to inventory and calculate the value of the property inappropriately taken by Dr. Slaughter....Now, this is not a trial for theft or conversion, but throughout the course of the last four days, this Court has been shocked to learn of the abuses of authority and the abuse of position of power that Dr. Slaughter has exhibited during his tenure. His testimony from the stand was the least credible testimony I have heard in thirteen years as a Judge. It's clear at this time that a very, very dark era at Southern University passed on June 30th of 2009[,] when Dr. Slaughter finally left that campus.²⁷

Judge Tyson stated that "in light of this evidence, no reasonable juror could infer that Anderson acted to punish Plaintiff because Plaintiff had testified in his prior lawsuit or before a Grand Jury."²⁸ Additionally, Judge Tyson found that "there is certainly no evidence

---

²⁵Record Document 65-2, Exhibit "A".

²⁶Record Document 158, n. 71.

²⁷Record Document 158, p. 28, n. 71.

²⁸ Id.

that the Board anticipated that Plaintiff's contract would be renewed."[29] When discussing the nexus between the conspiracy between the defendants and Plaintiff's testimony in federal court for the Section 1985 claims, the Court found that "...there is insufficient evidence for a jury to conclude that either Atkins or Anderson acted to punish Plaintiff because Plaintiff had testified in his lawsuit or before a Grand Jury."[30]

Slaughter has not provided further evidence that would support his contention that Atkins or Anderson were substantially motivated by his testimony in the prior lawsuit or before the Grand Jury when they allegedly encouraged the members of the Board not to renew Slaughter's employment contract. The evidence provided by Defendants and this Court's prior findings make clear that the Defendants' decision not to renew Slaughter's contract was not substantially motivated by his testimony in the prior Federal litigation. As such, Slaughter has not created a trial issue of material fact and his First Amendment Claim against defendants cannot survive summary judgment.

**II.   Due Process Claim**

Slaughter has argued that Atkins and Anderson violated his procedural due process rights by damaging his reputation and denying him a hearing when they failed to renew his contract with Southern.[31] Atkins and Anderson argue that Slaughter lacks a protected property interest in his continued employment and thus does not have either a substantive or procedural due process claim.[32]

---

[29] Record Document 158, p. 24.

[30] Id. at p. 26.

[31] Record Document 199-5, p. 19, ¶8.

[32] Record Document 202-3, p. 8.

The United States Supreme Court has stated that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569-570 (1972). The Court found that determining whether due process rights apply does not depend on the weight of the particular interests involved but rather the nature of those interests. Id. at 570-571. The Court in Roth found that there could be a case in which liberty interests would be implicated by the State's refusal to re-employ a person, namely if, in declining to rehire that person, the State made charges against him that might seriously damage his standing and associations in the community. Id. at 573. The Court stated that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Id. at 575.

The Court found in Roth that when a non-tenured teacher was not rehired at the end of the school year, "there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Id. at 573. Therefore, the teacher's liberty interest was not implicated. Id.

Here, Slaughter has not alleged any particular acts of defendants Atkins or Anderson that were designed to seriously damage his standing and associations in the community or otherwise stigmatize him in a manner that would foreclose on his ability to take

advantage of other employment opportunities.[33] Applying the guidance set forth in Roth, Slaughter has not alleged any actions by defendants Atkins and Anderson that implicate his liberty interest, and there is no evidence suggesting they violated his procedural due process rights. Accordingly, Plaintiff's due process claims against Atkins and Anderson must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Atkins and Anderson's Motions for Summary Judgment [Record Documents 160, 161, 181 and 182] are hereby **GRANTED**. The Plaintiff's claims against Defendants Atkins and Anderson are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 16th day of September, 2014.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[33] Plaintiff's complaint includes an allegation that "a purportedly 'anonymous' letter was received by defendants Clayton and Montgomery accusing Petitioner of illegally having a Southern University employee work for him at his personal residence." See Record Document 1. However, there is no evidence in the record that this letter was sent by either Atkins or Anderson. All of Plaintiff's other charges against his reputation are made against other defendants.