RALPH SLAUGHTER                    CIVIL ACTION NO. 09-00190

VERSUS                             JUDGE ELIZABETH ERNY FOOTE

DALE ATKINS ET AL                  MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment Based on Res Judicata filed by the Defendants, the Board of Supervisors of Southern University and Agricultural & Mechanical College ("Board"), Tony Clayton ("Clayton"), and Lea Polk Montgomery ("Montgomery"). [Record Document 248]. The Plaintiff, Dr. Ralph Slaughter ("Slaughter"), opposes the motion. [Record Document 253]. For the reasons stated herein, the Defendants' Motion for Summary Judgment Based on Res Judicata is **GRANTED**. Therefore, Slaughter's remaining claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND FACTS

This litigation arises out Plaintiff's previous employment as President of the Southern University System ("Southern") and the Board's refusal to extend his employment contract. This case has an extensive procedural and factual history with relevant factual events dating back to 2006. The Court will attempt to succinctly set forth the history of the case leading up to this instant ruling.

### A.     The 2007 Federal Lawsuit

Slaughter was appointed President of Southern on April 1, 2006. On May 18, 2007, while President, Slaughter filed a lawsuit in the 19th Judicial District

Court, East Baton Rouge Parish, Louisiana against the Board, Louisiana Governor

Kathleen Blanco, and Board members Dale Atkins ("Atkins") and John Joseph.

[USDC Docket No. 3:07-cv-00379, Middle District of Louisiana, Record Document

1]. In the lawsuit Slaughter alleged that he was illegally retaliated against by the

defendants for reporting, protesting, and complaining about sexual harassment

in the workplace, and providing testimony and evidence before a federal grand

jury, all in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, Title IX, Louisiana

Revised Statute 23:967, and Louisiana tort law.  Id. On May 30, 2007, the

defendants removed the case to federal court. Id.

The original federal case was resolved with the execution of two

documents relevant to the current matter: (1) a Settlement Agreement and

Authentic Act of Release between the Plaintiff and the Board, and (2) an

Employment Contract. [Record Document 248-3, Ex. B; 248-4, Ex. C]. In the

Settlement Agreement, Plaintiff agreed to dismiss any and all claims which he

had or may have had against the defendants.  The Settlement Agreement

expressly provided that the original federal lawsuit would be dismissed with

prejudice in exchange for the execution of the Employment Contract. [Record

Document 248-3, Ex. B ¶ 4].  The Employment Contract provided in relevant

part, as follows:

> The Board hereby employs Dr. Ralph Slaughter to serve as
> President of the Southern University System and Secretary to the
> Board of Supervisors of Southern University . . . This agreement is
> issued for the fiscal year (July 1 – June 30) commencing July 1,
> 2007 for a fixed term of two (2) years ending June 30, 2009. This
> agreement shall expire and terminate on June 30, 2009. Contingent

upon a favorable performance review and affirmative act of the Board of Supervisors on or before April 1, 2009, this contract may be extended.

[Record Document 248-4, Ex. C ¶ 1].

## B.    The 2009 State and Federal Lawsuits

Slaughter served an additional two-year term as President of Southern as set forth in the Employment Agreement, and received satisfactory performance reviews. Nevertheless, the Board convened on March 27, 2009, and by a vote of eleven to five, declined to extend Slaughter's employment contract beyond its expiration date of June 30, 2009. Within a week of the Board's decision not to extend his employment contract, Slaughter filed three separate lawsuits against the Board and several of its members in both state and federal court.

### I.    State Court Open Meetings Lawsuit

On April 2, 2009, Slaughter filed suit number 577,011 in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana (the "Open Meetings lawsuit") against the Board seeking an injunction and a judgment nullifying the vote taken March 27, 2009 due to alleged violations of the Louisiana Open Meetings Law, La. R.S. 42:13. [Record Document 248-6, Ex. E].  Therein, Slaughter alleged that the Board, through its members, engaged in secret polling and balloting prior to the official vote in violation of La. R.S. 42:4.1 and 42:5. Id.

### ii.    State Court Retaliation Lawsuit

The following day, April 3, 2009, Slaughter filed suit number 577,092 in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana (the

"retaliation lawsuit") against the Board, alleging that the Board, through its various members, conspired to force him from his position as President because of his prior participation as a whistleblower and witness in the 2007 federal lawsuit, in violation of Louisiana's protections against reprisal, La. R.S. 23:967. [Record Document 248-8, Ex. G]. Slaughter also made claims under Louisiana tort law for intentional infliction of emotional distress and abuse of rights. Id. Slaughter did not name individual members of the Board in this lawsuit. Id.

In his petition Slaughter alleged that the Board, through the actions of its members, contacted other members and improperly polled and lobbied for sufficient votes to secure his termination. Id. at ¶ 34.  During the March 27, 2009 meeting, despite Slaughter's favorable employment evaluations, the Board took several recesses to continue to poll its members and secure votes not to extend Slaughter's employment contract. Id. at ¶ 38. Slaughter alleged that members of the Board were told that the Governor wanted him terminated in an attempt to sway votes. Id. The motion not to extend Slaughter's contract was offered by Board member Pat Magee, allegedly upon the direction of Clayton and Montgomery. Id. at ¶ 39.  The motion was carried by a vote of eleven to five. Id. at ¶ 42. Slaughter alleged that the Board had already determined that it would not extend his contract before the vote, as evidenced by a prepared Resolution stating the same. Id. at ¶¶ 40-41.

Slaughter alleged the following acts by Clayton in support of his state court lawsuit against the Board, although he was not named as a defendant.

Throughout 2007, Clayton continued to complain to others about Slaughter naming him in the original 2007 lawsuit and testifying against him. <u>Id.</u> at ¶ 18. In 2008, Clayton met with Johnny Anderson ("Anderson"), another Board member, and agreed to terminate Plaintiff's employment in exchange for Anderson's help in securing votes for Clayton to become Chairman of the Board. <u>Id.</u> at ¶ 19. On November 27, 2008, Board members Clayton, Atkins, and Anderson met at Atkins' residence and decided that they would do everything they could to terminate and remove Plaintiff as President. <u>Id.</u> at ¶ 21. In late 2008, Clayton, as Chairman of the Board, received a "purportedly anonymous" letter accusing Slaughter of illegally having a Southern University employee work for him at his personal residence, despite the employee actually being paid by the private Southern University Foundation. <u>Id.</u> at ¶ 23. When Slaughter requested a copy of the letter, Clayton refused. <u>Id.</u> at ¶ 24. Clayton then wrote to the Louisiana Legislature Auditor's Office requesting an inquiry into the legality of the employee working in Slaughter's home. <u>Id.</u> at ¶ 26. Thereafter, the Board, through Clayton, released Clayton's letter to the media in an effort to paint Slaughter in a false public light and malign his character on the eve of the meeting concerning the extension of his employment contract. <u>Id.</u> at ¶ 28. In connection with the media release, a news outlet filmed and televised one of Slaughter's children. <u>Id.</u> at ¶ 28. Slaughter alleges that the release of the letter to the media was in retaliation for his prior participation in the 2007 federal lawsuit. <u>Id.</u> at ¶ 30.

Slaughter alleged that during a fundraiser for a local judicial candidate, Clayton and Board member Pat Magee openly discussed how to remove Slaughter from his post. Id. at ¶ 33. Prior to the Board meeting held on March 27, 2009, Clayton and Anderson met at the home of "DW" to discuss their plans to remove Plaintiff as President. Id. at ¶ 35.[1] At the meeting Clayton and Anderson also determined how the search process for a new President would be handled, and identified who would be named to the search committee. Id.

Slaughter further alleged that on March 20, 2009, within 10 days of the March 27, 2009 meeting, Clayton improperly added Agenda Item 5C regarding Slaughter's continued employment beyond June 30, 2009, without proper notice to Slaughter. Id. at ¶ 36. Clayton requested that Slaughter be the one to call the vote on Agenda Item 5C. Id. at ¶ 42. After the vote, Clayton announced that the motion passed and then immediately announced the members of the search committee for a new President, which Plaintiff believes to be the same individuals decided upon at the meeting at the home of "DW." Id. at ¶ 43. Following the vote, Clayton issued an email to the Board stating that he would advise Slaughter that he was no longer authorized to bind the university in a contract for the remainder of his term as President. Id. at ¶ 46. On March 30, 2009, Clayton sent an email to the Board urging them to stop "airing all of this on the SU WEB site" (Southern University's website). Id. at ¶ 49. Clayton sent the email because he had become aware from a news story that Slaughter

_____

[1]     Plaintiff does not identify "DW" in his pleadings, but states that he will do so if the name is subject to a protective order.

intended to pursue litigation based on the Board's decision not to extend his contract. Id. Later that same day, Clayton sent an email to the Board stating that Slaughter would not be placed on paid administrative leave. Id. at ¶ 50. Instead, the Board would discuss the selection of an interim President on or before June 2009, with the understanding that the individual would not assume duties as interim President until July 1, 2009, the day after Slaughter's term would expire. Id.

Plaintiff made the following factual allegations against Montgomery in support of his state court claims against the Board, although she was not named as a defendant. In early 2009, Montgomery stated in front of Board members Clayton and Taylor that the Board needed to "get rid of Petitioner" and that "we should've gotten rid of him last time." Id. at ¶ 32. Montgomery also complained to other Board members that Slaughter refused to begin an investigation into "Ag Center" Chancellor Leodrey Williams, allegedly because Williams refused to hire a friend of Montgomery. Id. Montgomery also "angrily confronted" Slaughter and demanded to know what he knew about an alleged argument that occurred between Montgomery's husband and another female at the Country Club of Louisiana. Id. Montgomery also allegedly told another Board member that she wanted Slaughter terminated because he allegedly reported to state officials that she was improperly appointed to represent the New Orleans Congressional District on the Board, yet she lived full-time in Baton Rouge. Id. Immediately after the March 27, 2009 vote not to extend Slaughter's contract, Montgomery

sent emails to the Board stating that all contractual arrangements on behalf of Southern would require at least two signatures, not just that of Slaughter. Id. at ¶ 45. On March 30, 2009, Montgomery sent an email to her fellow Board members stating that the announcement of the search committee was not in compliance with Board procedure, and urged the Board to clear up the situation as soon as possible. Id. at ¶ 48.

Slaughter also filed two amendments to his original complaint in case 577,092 (the retaliation lawsuit): a "Supplemental, Amending, and Restated Petition" and "Second Supplemental, Amending, and Restated Petition." The amendments included additional information to bolster Slaughter's claim under La. R.S. 23:967, Louisiana's whistleblower protection statute. Therein, Slaughter provided additional details regarding his protected activity surrounding his 2007 lawsuit. [Record Document 248-14 at ¶ 52a]. Slaughter also alleged that after the 2007 lawsuit settled, the Board, through its members, harassed, terminated, and publicly ridiculed him because of his prior participation in the 2007 lawsuit. [Record Document 248-14 at ¶ 17a]. Slaughter claims that Clayton told Joseph Shelton and Cedric Upshaw that Slaughter would be fired because of his prior whistleblowing. Id. at ¶ 18a.

Slaughter also provided additional examples of whistleblowing activity that occurred after his 2007 lawsuit in support his claim of reprisal in violation of La. R.S. 23:967. [Record Document 248-13 and 248-14]. These additional allegations are not contained in the 2009 federal lawsuit. Slaughter claimed that

as President he received information that former Athletic Director Earl Hill ("Hill") was fraudulently charging the school for hours he did not work. Id. at ¶ 18c. However, when Slaughter proceeded to terminate Hill, Board members Clayton and Anderson intervened, stating that Hill was "untouchable" and ordered Slaughter to take no action. Id. at ¶ 18d. Slaughter states that after he was terminated Hill boasted that Slaughter had been terminated by his friends on the Board. Id. at ¶ 18f.  Slaughter also alleged that in late 2008, Montgomery attempted to pressure him into promoting an individual without following proper procedures, which he reported. Id. at ¶ 52d.

### iii.    Federal Court Lawsuit

On April 3, 2009, the same day that Slaughter filed his state court lawsuit 577,092 (the retaliation lawsuit), Slaughter filed this instant lawsuit against Atkins, Anderson, Clayton, and Montgomery, which contains similar factual allegations to those contained in the state court retaliation lawsuit.[2]  [Record Document 1]. On August 24, 2009, Slaughter was granted leave to file a "Supplemental and Amending Complaint" adding the Board as a Defendant. [Record Document 42].[3]  Slaughter claims that the Defendants conspired to force him from his position as President of Southern in retaliation for filing the original 2007 federal litigation, engaging in activity protected by Title VII, and for providing testimony and evidence in connection with the 2007 lawsuit. Id.  He

---

[2]      Atkins and Anderson were previously dismissed from this lawsuit by summary judgment. [Record Document 237].

[3]      Plaintiff's Supplemental and Amending Complaint only provides additions to his Original Complaint. The Court will refer to both documents as required.

alleges violations of Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1985(2) and (3), and Louisiana state law tort claims of intentional infliction of emotional distress and abuse of rights. Id.

The factual allegations of this suit are nearly identical to those contained in the state court retaliation lawsuit, with a few minor changes and additions. Primarily, in addition to the Board, Slaughter asserts claims against individual Board members Atkins, Anderson, Clayton, and Montgomery. [Record Document 1 at ¶ 2]. Slaughter also alleges that at all times Clayton, Montgomery, Anderson, and Atkins were agents of the Board within the meaning of Title VII. [Record Document 42 at ¶ 17a]. Slaughter also alleges that at all times Clayton, Montgomery, Anderson, and Atkins were acting under color of law within the meaning and intent of 42 U.S.C. § 1983. [Record Document 42 at ¶ 48].

This suit includes the same factual allegations against Clayton as the state court lawsuit with a few additions. The additions are as follows. First, Clayton admitted to withholding an email between Anderson and a female employee in the original 2007 lawsuit because of Clayton's relationship with the female employee. [Record Document 1 at ¶ 18]. Next, after Slaughter received a positive job performance evaluation in July 2008, the Board, Clayton, and Montgomery formulated a new evaluation policy that significantly altered how Slaughter would be evaluated in 2009. [Record Document 42 at ¶ 22a]. Under the new policy, Slaughter would only be evaluated by members of the Board, while under the old policy he was evaluated by faculty, senior administrative

staff, the student body, and alumni leadership. Id. Slaughter alleges that the evaluation policy was deliberately changed before the meeting regarding the expiration of his employment contract in an effort to undermine his performance review. Id. Slaughter contends that the Board, through its members, revised the policy in furtherance of their plan to terminate his employment. Id.[4] Also added to the federal lawsuit is an allegation that prior to the March 27, 2009 vote, Clayton met with Domoine Rutledge in February 2009 in Atlanta, Georgia, to secure Rutledge to be the chair of the upcoming search committee for Slaughter's replacement. [Record Document 42 at ¶ 22b].

Slaughter's Supplemental and Amending Complaint also includes additional alleged actions by the Board that took place after the vote not to extend his contract. It is alleged that on May 5, 2009, after Slaughter filed his state and federal lawsuits, the Board, through its member Walter Dumas, faxed a series of documents to the Baton Rouge Advocate regarding payment of student stipends by the Southern University Foundation to student board member and Student Government Association ("SGA") President, Jamal Taylor ("Taylor"), in an effort to publicly attack Slaughter and Taylor for Taylor's participation in this litigation. [Record Document 42 at ¶ 47f]. The inference being that Taylor accepted a bribe for his testimony. The documents were released despite Clayton offering sworn testimony that there was "nothing wrong" with the payments and confirming that virtually every past SGA President

---

[4] The Court notes that Slaughter admits in his complaint that he received a satisfactory job performance under the new evaluation model. [Record Document 1 at ¶ 37].

received similar stipends. Id.  Slaughter also alleges that as a direct result of the released documents to the Baton Rouge Advocate, Taylor received death threats via email. Id.

Also added in the Supplemental and Amending Complaint is an allegation that on June 30, 2009, after the filing of the state and federal lawsuits, Board member Pat Magee contacted the Baton Rouge Advocate, publicly accusing Slaughter of misappropriating office furniture. Id. at ¶ 47g. Slaughter alleges that despite an audit to the contrary, the Board continues to publicly state that he misappropriated office furniture. Id. at ¶ 47g.

Finally, Slaughter also alleges that since the original 2007 lawsuit, five of the eight witnesses against Southern have been proposed for termination.  He also alleges that two other employees who provided evidence in these proceedings have been proposed for termination. Id. at ¶ 47h.  Slaughter offered no further details about these individuals.

### iv.    Dismissal of the State Court Lawsuits with Prejudice

On May 26, 2009, Slaughter voluntarily filed a motion to dismiss his state court Open Meetings lawsuit, case number 577,011, stating that the parties had amicably resolved the matter. [Record Document 248-7, Ex. F].  The 19th Judicial District Court dismissed case number 577,011 with prejudice.  Id. Following the dismissal of suit 577,011, the Board raised the exception of res judicata in the retaliation lawsuit, case 577,092, based on Slaughter's voluntary dismissal with prejudice of case 577,011.  On August 20, 2014, after a hearing

on the matter, the 19th Judicial District Court issued a final judgment wherein it sustained the Board's exception of res judicata as well as the Board's exception of no cause of action. [Record Document 248-9, Ex. H]. The court dismissed case 577,092, the retaliation lawsuit, with prejudice. Id. Thereafter, Slaughter appealed the dismissal of case 577,092 to the Louisiana First Circuit Court of Appeals.

On February 18, 2016, the First Circuit Court of Appeals affirmed the ruling of the 19th Judicial District Court. The appellate court held that the doctrine of res judicata barred Slaughter's retaliation case, and that Slaughter failed to establish an exceptional circumstance that would offer relief from the bar of res judicata. [Record Document 248-10, Ex. I]. The appellate court noted that both of Slaughter's suits were filed in response to the Board's non-renewal of his employment contract and that all of the facts alleged were known at the time both lawsuits were filed. Id. Therefore, the appellate court concluded that both suits arose out of the same occurrence and that res judicata barred the parties from relitigating matters that were or could have been raised in the first cause of action. Id. Because Slaughter, on his own motion, dismissed his first suit with prejudice without reserving any rights to maintain his second suit, the appellate court found that none of the exceptions to res judicata were applicable in his case. Id. Thus, the appellate court affirmed the trial court's dismissal with prejudice of Slaughter's retaliation lawsuit. Id. Slaughter did not file a writ with the Louisiana Supreme Court.

## C. Current Posture of the Case

In the interim, on September 14, 2014, this Court issued a stay of the instant federal lawsuit while the judgment of 19th Judicial District Court dismissing case 577,092 was on appeal. [Record Document 242]. On May 26, 2016, following the decision by the Louisiana First Circuit Court of Appeals, a status conference was held to determine the best manner to proceed with the federal litigation in light of the ruling. [Record Document 246]. A deadline was set for the Defendants to file a summary judgment motion alleging res judicata based on the decisions of the 19th Judicial District Court and the First Circuit Court of Appeals. Id. Defendants have moved for summary judgment alleging res judicata. [Record Document 248]. Slaughter opposes the motion. [Record Document 253].

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to

---

[5] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence.  See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion").  While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor.  Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

Defendants move for summary judgment and the dismissal of Plaintiff's claims against them premised on res judicata of the final judgment of the 19th Judicial District Court, or alternatively, res judicata based on the 2007 settlement agreement between the Plaintiff and the Board of Supervisors.[6]

## I.  Res Judicata

The Full Faith and Credit Clause Act mandates that judicial proceedings of state courts "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they were taken." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996) (citing 28 U.S.C. § 1738). "A final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons

---

[6]    This Court previously ruled that the 2007 Settlement Agreement is insufficient for res judicata purposes.  [Record Document 158].

governed by the judgment, qualifies for recognition throughout the land." <u>Baker</u>
<u>v. General Motors Corp.</u>, 522 U.S. 222, 233 (1998).

"The doctrine of res judicata, or claim preclusion, forecloses relitigation of
claims that were or could have been raised in a prior action." <u>Davis v. Dallas</u>
<u>Area Rapid Transit</u>, 383 F.3d 309, 312-13 (5th Cir. 2004). When a federal court
is asked to determine the effect of a state court judgment for res judicata
purposes, it must give the judgment the same preclusive effect that it would
have in another court of the same state. <u>Portillo v. Cunningham</u>, 872 F.3d 728,
735 (5th Cir. 2017)(citing <u>Richardson v. Wells Fargo Bank, N.A.</u>, 839 F.3d 442,
449 (5th Cir. 2016). Thus, this Court must apply the principles of res judicata of
Louisiana, the state rendering the judgment. <u>Hernandez v. City of Lafayette</u>,
699 F.2d 734, 736 (5th Cir. 1983).[7]

The doctrine of res judicata in Louisiana is set forth in La. R.S. 13:4231,
which was amended in 1990, as follows:

> Except as otherwise provided by law, a valid and final judgment is
> conclusive between the same parties, except on appeal or other
> direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action
> existing at the time of final judgment arising out of the transaction
> or occurrence that is the subject matter of the litigation are
> extinguished and merged in the judgment.

---

[7]   This Court's previous ruling considered whether Plaintiff's settlement of his
2007 federal lawsuit precluded this instant case under the doctrine of res
judicata. [Record Document 158]. In doing so the Court applied the four
elements set forth under federal law in <u>Davis v. Dallas Area Rapid Transit</u>, 383
F.3d at 312-13. [Record Document 158].  Because the current question involves
the preclusive effect of a Louisiana state court judgment, this court must apply
Louisiana's res judicata principles to determine whether the judgment is a bar to
further litigation. <u>See</u> <u>Hernandez v. City of Lafayette,</u> 699 F.2d at 736.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

In interpreting La. R.S. 13:4231, Louisiana courts have set forth five elements which must be established to find that a second cause of action is precluded by res judicata: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 2002-1385 (La. 2/25/03), 843 So.2d 1049, 1053. Following the 1990 amendments, the Louisiana Supreme Court considers the "chief inquiry to be whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." Chevron USA Inc. v. State, 2007-2469 (La. 9/8/08), 993 So.2d 187, 194. This change in the law "serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." La. R.S. 13:4231 cmt. a.

Turning to the elements set forth in Burguieres, the Court finds that the judgment dismissing state court case 577,092 (the retaliation lawsuit) is both

valid and final. "For purposes of res judicata, a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given." Burguieres, 843 So.2d at 1053 (citing La. R.S. 13:4231 cmt. d). The parties are in agreement that the judgment is valid. However, Plaintiff takes issue with whether the judgment may be considered as final, noting that it was not decided on the merits. [Record Document 253 at 11]. The comments to La. R.S. 4231 state that a final judgment is one "that disposes of the merits in whole or in part." La. R.S. 4231 cmt. d. The comments further state that "the use of the phrase 'final judgment' also means that the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal." Id. There is no requirement under Louisiana law that a case must be decided on the merits for it to be final. Louisiana Code of Civil Procedure article 1673 states "a judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial." A judgment of dismissal with prejudice may be entered based on any number of peremptory exceptions allowed under Louisiana law. La. Code Civ. P. art. 927. "There is no requirement that the claims be actually litigated for the doctrine of res judicata to apply." Matherne v. TWH Holdings, LLC, 12-1878 (La. App. 1 Cir. 12/6/2013), 136 So.3d 854, 860; see also Henkelmann v. Whiskey Island Preserve, LLC, 13-0180 (La. App. 1 Cir. 5/15/14), 145 So.3d 465, 470. The judgment issued by the 19th Judicial District Court in lawsuit 577,092 was clearly titled "Final Judgment"

and sustained the Board's peremptory exceptions of res judicata and no cause of action. [Record Document 248-9, Ex. H]. The Final Judgment dismissed the case in its entirety with prejudice. Id. The First Circuit Court of Appeals affirmed that judgment, and Plaintiff did not file a writ to the Louisiana Supreme Court. Thus, the judgment is both final and valid.

Next, the Court finds that the cause or causes of action asserted in the second suit (this federal lawsuit) existed at the time of the final judgment in the state court litigation. Slaughter filed his state and federal lawsuits on the same date, April 3, 2009. All of the allegations contained within this federal lawsuit, including the additional allegations added in Plaintiff's Supplemental and Amending Complaint, involve alleged bad acts occurring years prior to the entry of the state court's judgment on August 21, 2014.

The Court also finds that the claims asserted in this lawsuit arose out of the same transaction or occurrence that was the subject matter of the state court lawsuit. The crux of both lawsuits is the decision of the Board not to extend Slaughter's employment contract in alleged retaliation for Slaughter's previous reporting of sexual harassment and participation in a lawsuit regarding the same. The factual allegations contained in both the state and federal lawsuits, filed on the same day, are strikingly similar. In fact, numerous paragraphs in both lawsuits contain identical language. While the federal and state lawsuits contain different causes of action under state and federal law, and the federal lawsuit includes the addition of individual Board members as

defendants, the operative facts in both lawsuits involve the same occurrence or transaction. As noted supra, Slaughter's Supplemental and Amended Complaint in this lawsuit contains allegations of retaliatory acts by the Board that were not contained his state court suit. The allegations include the release of information to the local news media post termination, and the termination of individuals who previously testified against the Board. The Court finds that these additional allegations are also part of the same transaction or occurrence contained in the state court lawsuit: the decision of the Board not to extend Slaughter's employment contract.[8] Thus, the Court finds that all of the causes of action

---

[8] Even if these additional factual allegations were not precluded by res judicata, they should still be dismissed. Slaughter's vague allegations about other unnamed individuals being retaliated against by the Board for their respective past participation in sexual harassment lawsuits are simply insufficient to "raise a right to relief above and beyond the speculative level" and into the "realm of plausible liability." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

As to Slaughter's allegations regarding the release of information by the Board to the local news media about the removal of state owned office furniture, the 19th Judicial District Court has already considered the issue in a separate lawsuit by Slaughter against the Board regarding compensation (case number 582,307), finding that Slaughter improperly removed property belonging to the University. The Oral Reasons for Judgment issued by Judge Timothy Kelley contained the following finding of fact:

> Now, the weekend prior to his last day, Dr. Slaughter emptied his office and the stadium suite of just about anything that wasn't nailed down, and he even took things that were nailed or screwed to the walls and windows. Clearly, he took a great deal to which he had no claim or right. While this is not a suit for conversion or theft, this fact must be recognized and cannot be understated. Southern University, from the first day after his departure, attempted to inventory and calculate the value of the property inappropriately taken by Dr. Slaughter. . . . . Southern University is justified in seeking a credit or setoff for items paid for with foundation funds which were improperly removed from the campus by Dr. Slaughter, as they became state property upon delivery to Southern University.

against the Board asserted in this case arose out of the same transaction or occurrence as alleged in the state court lawsuit.

The only remaining element of contention is whether the parties may be considered the same for res judicata purposes. The Board is a party to both lawsuits and would certainly meet the requirement that the parties in the lawsuits be the same. However, Plaintiff argues that this element cannot be met by the individually named defendants because his state court lawsuit was solely against the Board while this lawsuit was brought against the Board and members Atkins, Anderson, Clayton, and Montgomery in their individual and official capacities. [Record Document 253 at 9].

The identities of the parties need not be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Hudson v. City of Bossier, 33,620 (La. App. 2 Cir. 8/25/00), 766 So.2d 738, 743. The preclusive effect of res judicata may bind nonparties who are deemed as

---

[Record Document 65-2, Ex. A]; affirmed Slaughter v. Board of Supervisors, 2010-1114 (La. App. 1 Cir. 8/2/11), 76 So.3d 465; writ denied 2011-2122 (La. 1/13/12), 77 So.3d 970. To the extent there was a release of information to the media, there cannot be a cause of action when the information was found to be truthful and the matter concerned public funds.

Finally, regarding the release of information concerning a stipend provided to Taylor, the SGA President, Plaintiff asserts that such stipends are customarily provided to any student elected as SGA President. If Taylor was harmed as a result of the release of the information regarding his SGA stipend, it is Taylor who must assert such a claim, not Slaughter. U.S. Const. art. III § 2, cl 1; Murray v. City of Austin, 947 F.2d 147, 151 (5th Cir. 1991).

"privies" of the named parties in certain circumstances: (1) the nonparty is a successor in interest to a named party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the original litigation whose interests are so closely aligned to the nonparty that they may be deemed the nonparty's virtual representative. Gilbert v. Visone, 30,204 (La. App. 2 Cir. 2/25/98), 708 So.2d 496, 500. Louisiana law is in line with federal law on the issue of privity, and Louisiana courts rely on federal jurisprudence in examining the issue. Hudson, 766 So.2d at 743. The court must narrowly construe the concepts of control and virtual representation. Id. It is not sufficient to merely show that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions. Id. Privity is a legal conclusion that the relationship between the one who is on the record and the non-party is sufficiently close to afford application of the principal of preclusion. Chastant v. Chastant, 2013-1402 (La. App. 3 Cir. 4/23/14), 138 So.3d 801, 807 (citing Southwest Airlines Co. v Texas International Airlines, 546 F.2d 84, 95 (5th Cir. 1977)).

Suits against government officials in their official capacity are suits against the government. Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). It is also a "general principle of the law of preclusion that state officials are, as a matter of law, in privity with the agency or department in which they serve." Schuster v. Martin, 861 F.2d 1369, 1373 (5th Cir. 1988). Board members sued in their individual capacities are in privity with the Board they serve. See Rushing v.

Board of Supervisors of the University of Louisiana System, No. 06-cv-623, 2008 WL 4200292 (M.D. La. Sept. 11, 2008) (finding that due process claims against individual board members not named in original lawsuit were precluded in a second lawsuit because the board members were in privity with the Board); see also Dean v. Mississippi Board of Bar Admissions, 394 Fed. Appx. 172, 177 (5th Cir. 2010) (applying federal law on privity, and affirming that 42 U.S.C. § 1983 claims against individual members of a Board of Bar Examiners were precluded in second lawsuit because claims concerned actions taken as board members).

In this case, the Board is vested with the statutory authority to exercise its power to supervise and manage the day-to-day operations of the Southern University System. La. R.S. 17:3351. As members of the Board, Defendants Clayton and Montgomery were authorized to make decisions regarding the University, including the appointment or retention of the President of Southern. See La. R.S. 17:3302(A). As members of the Board, Clayton and Montgomery both voted against extending Slaughter's employment contract. Although Clayton and Montgomery were not named in the state court lawsuit, the majority of the allegations contained in the state court lawsuit concern the alleged bad acts of Clayton and Montgomery as Board members in connection with the Board's decision not to extend Slaughter's contract. The Court also notes that the same factual allegations made against Clayton and Montgomery in the state court lawsuit also appear in this federal lawsuit. The Board appeared in the state court lawsuit and represented its own interests and the interests of Clayton and

Montgomery. Clearly, the interests of the Board are so closely aligned with Clayton and Montgomery that the Board may be considered their virtual representative. Therefore, this Court finds that privity exists between the Board and the individually named Board members.

The Court finds that all elements of res judicata have been met. However, in Louisiana there are limited exceptions to the general rule of res judicata. La. R.S. 13:4232. A prior judgment does not bar another action by the plaintiff: (1) when exceptional circumstances justify relief from the res judicata effect of the judgment; (2) when the judgment dismissed the first cause of action without prejudice; or (3) when the judgment reserved the right of the plaintiff to bring another action. Id. The Court need only consider the first avenue for an exception because the state court final judgment dismissed Plaintiff's claims with prejudice and it did not reserve the right for Plaintiff to bring another cause of action.

The discretion to grant relief from a judgment for res judicata purposes based on exceptional circumstances allows the Court to balance the principle of res judicata with the interests of justice. Davis v. J.R. Logging, Inc., 2013-0568 (La. App. 1 Cir. 11/8/13), 136 So.3d 828, 831. However, it must only be granted in very limited circumstances for truly exceptional cases, otherwise res judicata would be defeated. Id. at 832. Exceptional circumstances sufficient to justify relief from res judicata may be appropriate for "complex procedural situations in which litigants are deprived of the opportunity to present their claims due to an

unanticipated quirk in the system, factual situations that could not be anticipated by the parties, or decisions that are totally beyond the control of the parties." McGregor v. Hospice Care of Louisiana in Baton Rouge, LLC, 2009-1357 (La. App. 1 Cir. 2/12/10), 36 So.3d 272, 279.

When the Louisiana First Circuit Court of Appeals considered whether Slaughter's case presented an exceptional circumstance, it found that it did not. [Record Document 248-10, Ex. I]. The court noted that Slaughter was not precluded from asserting all of his causes of action in his original Open Meetings lawsuit, case 577,011. Id. Thus, it found no error in the trial court's dismissal with prejudice of his state retaliation lawsuit, case 577,092, based on res judicata. Id.  This Court is in agreement with the court of appeals that an exception is not warranted.  Slaughter had the opportunity to present all of his alleged causes of action in a single state court petition. The fact that he chose to split his causes of action into two cases resulting in res judicata of his retaliation case is not an exceptional circumstance.

Accordingly, this Court finds that the final judgment of the 19th Judicial District Court, East Baton Rouge Parish, Louisiana bars the Plaintiff from relitigating any claims that arose from the same occurrence as his state court lawsuit. All of the claims contained in this federal lawsuit were part of the same transaction or occurrence of events described in the state court lawsuit, and the Board, Clayton, and Montgomery are in privity with each other.  Therefore,

Plaintiff's remaining claims must be dismissed because they are precluded under the doctrine of res judicata.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Record Document 248] is hereby **GRANTED.** Therefore, Plaintiff's remaining claims against the Defendants are **DISMISSED WITH PREJUDICE**. A judgment in accordance with this ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 22nd day of January, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE